## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE | : | |
| | : | **Chapter 7** |
| **ATOMICA DESIGN GROUP, INC.,** | : | |
| | : | **Case No. 12-17235-AMC** |
| **DEBTOR** | : | |
| | : | |
| | : | |
| **BONNIE FINKEL, AS CHAPTER 7** | : | |
| **TRUSTEE OF THE ESTATE OF** | : | |
| **ATOMICA DESIGN GROUP, INC.,** | : | **Adv. Proc. No. 14-00333-AMC** |
| | : | |
| **PLAINTIFF** | : | |
| | : | |
| **V.** | : | |
| | : | |
| **WEVEEL LLC; JUNTO CREATIVE** | : | |
| **LLC; JOSEPH DIPALMA; TIZIANO** | : | |
| **RECCHIA; JASON LANE; IYA** | : | |
| **TECHNOLOGIES, LLC; AND** | : | |
| **LAROSE INDUSTRIES, LLC, D/B/A** | : | |
| **CRA-Z-ART.** | : | |
| | : | |
| **DEFENDANTS** | : | |

Ashely M. Chan, United States Bankruptcy Judge

## OPINION

### I.    INTRODUCTION

Bonnie F. Finkel, the Chapter 7 Trustee in this case ("Trustee"), has filed a Motion for

Sanctions ("Motion") against defendant, WeVeel, LLC ("WeVeel"), seeking reasonable

attorneys' fees and costs incurred as a result of WeVeel's violation of this Court's orders

compelling production of documents. Because WeVeel unreasonably withheld crucial financial

documents and engaged in a pattern of deceit and delay since March of 2017, the Court will

1

grant the Trustee's motion, in part, and sanction WeVeel pursuant to Federal Rules of Civil

Procedure 37(b)(2)(C) and 37(a)(5)(A) ("Rule 37").

## II.    FACTUAL AND PROCEDURAL BACKGROUND

On February 10, 2017, the Trustee served defendants WeVeel and Jason Lane ("Mr.

Lane" and collectively with WeVeel, the "Defendants") with her first request for production of

documents and first set of interrogatories ("Discovery Request"). Mot. for Sanc. ¶ 9. In relevant

part, the Trustee requested that WeVeel provide (1) records which record, reflect, refer, or relate

to the distribution and/or sales of Scentos brand markers; (2) records which record, reflect, refer,

or relate to the distribution and/or sales of Sidewalk Tattoos; (3) records which record, reflect,

refer, or relate to the distribution and/or sales of Kindercrafts; (4) records which record, reflect,

refer, or relate to the distribution and/or sales of Best Friends products; and (5) documents

sufficient to establish WeVeel's sales, by dollar and unit volume, for each of those products sold,

offered for sale, advertised or promoted by WeVeel, for each year from 2010 through the present

date (collectively, "the Sales Requests"). Mot. for Sanc. Ex. B First Set of Doc. Requests for

Defendant WeVeel, at ¶¶ 6, 9, 12, 15, 18. In addition, the Trustee requested Mr. Lane's federal

income tax returns ("Tax Returns") from 2009 through the present. Mot. for Sanc. Ex. B First Set

of Doc. Requests for Defendant Jason Lane, at ¶ 17.

WeVeel's initial disclosures, submitted February 21, 2017, failed to identify **any**

documents or classes of documents which would relate either to its defenses or the Trustee's

claims regarding the debtor, Atomica's, alleged stolen intellectual property. Trustee Mot. to

Compel 4; *see* ECF No. ("ECF") 131. Accordingly, on March 1, 2017, the Trustee filed a Motion

to Compel Disclosures and Strike Initial Disclosures as Non-responsive. ECF 135.

On March 13, 2017, the Defendants jointly filed a motion to stay discovery and mediation on the basis that the Defendants would soon be filing a motion for summary judgment. ECF 140; Mot. to Stay Disc. ¶ 27. On March 24, 2017, the Trustee filed a Motion to Compel Responses to Her Requests for Production of Documents and Interrogatories ("Motion to Compel") based upon Defendants' failure to comply with the Trustee's Discovery Request. ECF 144.

On March 31, 2017, the Defendants filed their motion for summary judgment ("SJ Motion"). ECF 147. On May 15, 2017, the SJ Motion was denied and the Court entered an order granting the Motion to Compel on May 16, 2017. ECF 162, ECF 168. Specifically, the order stated that "Defendants shall, within ten (10) days of this Order, provide full and complete responses, without objection to each and every Interrogatory and Document Request." ECF 168. On May 18, 2017, the Court amended its order to add that "Defendants are permitted to include limited objections with their responses to Plaintiff's Interrogatory and Document Requests." (collectively "the May Orders"). ECF 169.

On June 20, 2017, WeVeel responded to the Trustee's document requests, producing thousands of documents electronically and making 18 boxes available for inspection ("18 Boxes") at WeVeel's office in Morrisville, Pennsylvania ("Morrisville Office"). Mot. for Sanc. ¶ 12; Opp. ¶ 11. On July 13, 2017, the Trustee sent WeVeel a letter notifying it that WeVeel's discovery responses were deficient because, *inter alia*, they "failed to include *any* responsive financial documents."[1] Mot. for Sanc. Ex. D. On July 25, 2017, WeVeel responded and initially asserted that it was "***prohibitively difficult to produce the financial and sales records that were***

---

[1] The letter also addressed issues with WeVeel's use of boilerplate objections and identical responses to each request; WeVeel's failure to identify if it was withholding any responsive documents; and the Trustee's inability to open some of the e-discovery. Mot. for Sanc. Ex. D.

*being requested*" and that Trustee's counsel was "welcome to visit [WeVeel's] offices in Morrisville, Pennsylvania for the purpose of reviewing the same."[2] *Id.* Ex. E (emphasis added).

On August 1, 2017, WeVeel again made a representation to the Trustee that financial and sales records were available for review in hard copy in the 18 Boxes at the Morrisville Office, including a detailed sales history with supporting checks, invoices, and payments, in addition to corporate records, licensing information, and employee records.[3] Trustee's Supp. Brief Ex. D. The letter also explained that, in WeVeel's early years as a start-up company, it did not have a sophisticated accounting system and did not classify items or the history of thousands of products because it had not needed to do so as a business function. *Id.* It could only verify sales by matching item numbers from art files with item numbers for each account to the hard copies of invoices and bank records available for inspection. *Id.*

On August 4, 2017, the Trustee notified WeVeel that she had contacted a copy company that could scan the 18 Boxes offsite in one week. Mot. for Sanc. ¶ 22. On August 15, 2017, WeVeel responded to the Trustee and stated its preference to use a local copy company. *Id.* at ¶ 23. WeVeel's copy company, however, did not deliver the scanned documents to WeVeel until six weeks later, on September 26, 2017. *Id.* at ¶ 24. WeVeel waited until October 6, 2017 to produce the scanned documents to the Trustee. *Id.*

After the Trustee reviewed the documents in the 18 Boxes, she found that the documents were largely non-responsive, in no particular order, and not labeled to correspond to the Trustee's requests. *Id.* Ex. M. Furthermore, the 18 Boxes lacked documents reflecting even basic

---

[2] The letter also defended WeVeel's use of boilerplate objections and identical responses and informed the Trustee that WeVeel had produced all e-discovery in its native format as she requested. Mot. for Sanc. Ex. E.

[3] This letter responded to a letter the Trustee had sent, but which no party provided as an exhibit on the record. WeVeel's letter also addressed specific issues with document requests 3, 4-6, 7-9, 10-12, 13-15, 16, 17, 19, 20, 21, and 22. Trustee's Supp. Brief Ex. D. Presumably, the letter addressed these requests in response to issues the Trustee brought up in her previous letter.

financial data or rudimentary sales figures and included no tax returns. *Id.* at ¶ 25, Ex. M. The

documents in the 18 Boxes included random, generic customer invoices, isolated purchase orders

with no discernable information about the specific products sold, random bank statements

lacking any reference to which products payments were attributable to, manufacturer invoices,

packing lists, shipping documents, product testing invoices, invoices for legal fees, Target

chargebacks, order forms for WB Mason office supplies, documents which were written almost

entirely in Chinese, and more. Trustee's Supp. Brief 7 n. 5, Ex. G; Opp. Ex. F-I; Trustee's Reply

to Opp. 9; Tr. May 30 Hrg. 69:9-11, 73:13-22, 82:19-23.

On December 8, 2017, in order to obtain sufficient discovery to engage in mediation, the

Trustee wrote to WeVeel and Mr. Lane and requested that they provide, at a minimum: (1) sales

revenue figures from 2010 to the present for Scentos, Sidewalk Tattoos, Kindercrafts, and Best

Friends; (2) WeVeel's and Mr. Lane's federal tax returns from 2009 to the present;[4] and (3)

audited financial statements,[5] all by December 22, 2017. Mot. for Sanc. Ex. G. By this point, the

Trustee had made repeated requests for Mr. Lane's Tax Returns, as well as sales and financial

information about Scentos, Sidewalk Tattoos, Kindercrafts, and Best Friends, since her original

February 2017 document request with no success. *See* Mot. for Sanc. ¶¶ 10, 14, 27, Ex. B First

Set of Doc. Requests for Defendant WeVeel, at ¶¶ 6, 9, 12, 15, 18; First Set of Doc. Requests for

Defendant Jason Lane, at ¶ 17; Ex. D, Ex. F; Trustee's Supp. Brief Ex. D.

On December 13, 2017, WeVeel continued to insist that it did not maintain its sales

records in a way that allows it to easily separate out specific products and product lines. Mot. for

---

[4] The Trustee did not specifically seek WeVeel's "federal tax returns" in her document request. She argued that federal tax returns fall under her request for "corporate filings." *See* Mot. for Sanc. Ex. B First Set of Doc. Requests for WeVeel, at ¶ 21.

[5] While the Trustee's document request had not *specifically* mentioned the exact term "financial statements," clearly such statements summarizing WeVeel's sales history would have included at least some responsive sales data, which the Trustee had sought for almost a year.

Sanc. Ex. H. WeVeel also asserted that raw sales data responsive to the Sales Requests was

produced, and that WeVeel did not have audited financial statements. *Id.* However, when

challenged by the Trustee to identify the bates numbered documents which contained the raw

sales data, WeVeel failed to identify any such documents. *Id.* at ¶ 36.

On December 17, 2017, the Trustee made a last-ditch effort to try to persuade WeVeel to

provide limited sales and financial information and notified WeVeel that the Trustee believed

that WeVeel's refusal to produce the requested documents was unreasonable and clearly

sanctionable. *Id.* Ex. M. The Trustee still offered to go to mediation if the requested documents

were provided by December 22, 2017. *Id.* WeVeel rejected the Trustee's proposal and, on

December 21, 2017, again represented that it had produced or made available for inspection all

documents in its possession which were responsive to the Trustee's requests in the form in which

they were maintained in the ordinary course of business. Opp. Ex. B.

Shortly thereafter, the Trustee discovered sales reports for WeVeel products generated by

WeVeel customers ("Customer Sales Reports"), such as Walmart, when she was reviewing

attachments to emails that WeVeel had produced in discovery. Mot. for Sanc. ¶ 37, Ex. I-K; Opp.

¶ 27; Trustee's Reply to Opp. 3.

On January 10, 2018, the Trustee filed the instant Motion against WeVeel and Mr. Lane,

requesting that they be sanctioned pursuant to Rule 37(b)(2)(A). ECF 182; Mot. for Sanc. ¶ 50.

Specifically, the Trustee sought to have WeVeel held in contempt for withholding responsive

sales and financial information and Lane held in contempt for withholding his Tax Returns. Mot.

for Sanc. ¶¶ 54, 57, 61. In the alternative, the Trustee requested that WeVeel and Mr. Lane be

sanctioned pursuant to Rule 37(b)(2)(C) and sought an order from the Court compelling full

production of the requested sales and financial information which the Trustee had been waiting to receive for almost 11 months. *Id.* at ¶ 65.

On January 11, 2018 and January 16, 2018, the Trustee issued subpoenas to 12 of WeVeel's customers, requesting their sales data for WeVeel products. Opp. ¶ 54. Between January 18, 2018 and January 31, 2018, the Trustee received multiple customer responses objecting to the request for documents and requiring payment before producing any responsive documents.[6] *See* Trustee's Reply to Opp. Ex. F; WeVeel's Reply to Supp. Brief ¶¶ 28-29, Ex. A-B.

On January 24, 2018, WeVeel filed its Opposition in Response to the Trustee's Motion for Sanctions ("Opposition"). ECF 184. In the Opposition, WeVeel continued to represent that it had no other responsive documents to produce and, with regard to sales and financial information, specifically stated that "*the documents do not exist.*" Opp. ¶¶ 3, 19, 25 (emphasis added). Furthermore, according to WeVeel, the Customer Sales Reports had been downloaded and printed in the past from customers' proprietary systems and could not be retroactively retrieved. Opp. ¶¶ 27-29; Tr. Feb. 14 Hrg. 44:19 – 45:1.

Thereafter, the Trustee discovered internal WeVeel sales reports ("Internal Sales Reports") attached to emails that WeVeel had produced in discovery, as well as emails referencing WeVeel's ability to generate sales reports in QuickBooks ("QB").[7] Trustee's Reply

---

[6] Sears and Walmart objected to the subpoenas, but indicated that they would be able to produce the requested documents if provided with a product identifier and if reimbursed prior to production for the cost of complying with the subpoenas. Trustee's Reply to Opp. 13, Ex. F. Michaels and Hobby Lobby objected as well, but indicated that they would be able to produce some documents following the entry of a protective order and reimbursement of expenses incurred responding to the subpoenas. *Id.* Amazon strongly objected to the subpoena without offering to work out an arrangement to comply with it. WeVeel Reply to Supp. ¶ 28, Ex. A. It seems that the Trustee ultimately decided not to follow up on the Amazon and Michaels subpoenas. *Id.* at ¶ 29. It is unclear whether the Trustee obtained additional records from the other third parties.

[7] While the Trustee does not provide the specific dates that she discovered the Internal Sales Reports, her counsel's time records reflect that counsel primarily focused on reviewing WeVeel emails for financial information between January 26, 2018 and February 13, 2018. *See* Fee Petition Ex. A.

7

to Opp. 3-7, Ex. A-E. WeVeel did not separately produce the responsive Internal Sales Reports

and Customer Sales Reports to the Trustee in the 18 Boxes. It is unclear why these reports were

not in the 18 Boxes or whether WeVeel purposefully buried the emails with the responsive

reports among the 20,000 emails that it produced or withheld these reports without realizing that

they were attached to the emails. Trustee's Supp. Brief 5 n.3. It is crystal clear, however, that

WeVeel failed to produce *any* reports generated by QB and that WeVeel *never* disclosed to the

Trustee that it had QB or the capacity to generate reports using QB.

On February 1, 2018, the Trustee filed a Reply to WeVeel's Opposition ("Reply Brief"),

asserting that the Internal Sales Reports that she had found suggested that WeVeel had

misrepresented that it had no additional responsive sales or financial records to produce,

describing the alleged incoherent manner in which the 18 Boxes were produced, and arguing that

the manner of production of raw data in the 18 Boxes warranted the imposition of sanctions.

Trustee's Reply to Opp. 2-11.

On February 14, 2018, at the initial hearing on the Motion, Michael Pecci ("Mr. Pecci"),

the CEO of WeVeel[8] testified that, when WeVeel was formed as a start-up in 2009, the four

founding members all had independent full time jobs in different states. Tr. Feb. 14 Hrg. 17:8-9;

20:5-7. Even by 2012, WeVeel still had no full time employees. *Id.* at 19:25 – 20:2. Mr. Lane,

one of the founders, kept the company's records, entirely in paper format, in Texas until 2014.

*Id.* at 19:5-24; 20:10-24. When Mr. Lane left WeVeel in 2014, he mailed the records to Mr.

Pecci in Morrisville, who stored them in a closet in the manner in which they had been received,

and never had reason to use them. *Id.* at 20:17 – 21:7. He did not change their order. *Id.* at 21:1-

---

[8] Subsequently, in April 2018, Mr. Pecci stepped down as CEO of WeVeel and became its consultant. Tr. May 30
Hrg. 17:15-24.

8

7. WeVeel obtained QB in 2015 and, prior to that time, WeVeel kept track of sales on a cash

basis, using invoices, bank statements, and receivables. *Id.* at 38:25 – 39:8.

   Mr. Pecci took over record keeping for Mr. Lane after Mr. Lane's 2014 departure from

WeVeel. *Id.* at 20:14-16. Over the past few years, most of WeVeel's products were assigned

multiple item numbers to accommodate retailer specific requests. Trustee's Supp. Brief Ex. D.

After getting QB, different interns and other employees, like the operations manager, would

input data from invoices, including the retailer's product number and product description, into

QB. Tr. Feb. 14 Hrg. 22:18 – 23:16. According to Mr. Pecci, because QB only contains the

retailer's product number and description, QB reports do not contain information consistent with

how WeVeel internally labels its products in its art files, making QB an unreliable source. *Id.* at

23:10-16. As a result, in order to verify the accuracy of QB sales figures, an employee would

have to match item numbers from WeVeel's art files with item numbers for each retailer's

account to hard copies of the invoices located in the 18 Boxes. Trustee Supp. Brief Ex. D; Tr.

Feb. 14 Hrg. 23:17 – 25:14. Furthermore, Mr. Pecci testified that QB cannot generate sales

reports by item, nor separate information out by product. Tr. Feb. 14 Hrg. 14:8-11; 26:16-17.

   With regard to the Internal Sales Reports, Mr. Pecci testified that some of the reports had

been created by a short-term intern using invoice data, QB, and information from sales

representatives. *Id.* at 26:18 – 27:5. He found her Internal Sales Reports unreliable and

inaccurate because (1) the intern never verified that QB described the sold products properly and

(2) she characterized various products to correspond to a brand, like Scentos, without verifying

the product actually belonged to that brand or was even a branded product. *Id.* at 27:18 – 28:8;

45:14-25; 46:1-9; 49:22-25. Without auditing the data she used, WeVeel could not attest to her

Internal Sales Reports' accuracy. He admitted, however, that WeVeel had just recently completed unaudited financial statements. *Id.* at 63:1, 20-24.

At the conclusion of the hearing, the Court expressed serious concern with Mr. Pecci's testimony that WeVeel had used QB to manage financial information for years and that it had unaudited financial statements which contradicted WeVeel's representations since June 2017 that it did not have any additional responsive sales or financial information. Tr. Feb. 14 Hrg. 38:24; 58:19-22; 62:6 – 64:19. Accordingly, the Court ordered that WeVeel promptly give the Trustee access to QB from 2015 onward and provide the Trustee with the unaudited financial statements and WeVeel's and Mr. Lane's Tax Returns with confidentiality protection. *Id.* at 52:6-11; 54:8-11; 60:22-24; 66:1-68:24; 69:23 - 70:2. The Court also raised concerns about the lack of organization of the 18 Boxes, which largely appeared to contain random, unresponsive documents, as well as WeVeel's failure to specifically identify responsive documents. *Id.* at 56:8 – 16; 57:6-18. In light of the Court's concern, WeVeel offered that "if your Honor wishes, we will go back through the scanned documents and identify by bates number the responsive documents for the financial records." *Id.* at 65:23 – 66:1. The Court accepted WeVeel's offer and continued the hearing to monitor WeVeel's supplemental production. ECF 187; Tr. Feb. 14 Hrg. 73:16-19.

On February 21, 2018, WeVeel promptly provided the Trustee with the unaudited financial statements, Tax Returns, and hard copies of some QB reports from 2015-2016. *See* Trustee's Supp. Brief 1-2, 6; WeVeel Reply to Supp. ¶ 7. WeVeel also gave the Trustee access to its QB so that she could generate her own reports as well. Trustee's Supp. Brief 2. On March 16, 2018, WeVeel provided the Trustee with a chart identifying the responsive documents in the 18

Boxes. *Id.* at 6. WeVeel ultimately identified only 3,100 responsive documents out of the total 14,000 documents in the 18 Boxes. *Id.*

On April 5, 2018, the Trustee filed a supplemental brief ("Supplemental Brief") with exhibits of some of the QB reports that had been produced. ECF 194; Trustee's Supp. Brief Ex. A, B. One exhibit showed a QB report which specifically identified sales by item detail ("Sales by Item Report"). Trustee's Supp. Brief Ex. A. In particular, the Sales by Item Report contained the name of the specific product sold (not just the brand), the date of the sale, the customer, the quantity sold, the unit sales price, and the total amount sold. *See id.* The Sales by Item Report specifically included sales for "Scentos Markers" and "Chalkadoo Sidewalk Tattoos." *Id.* Another exhibit showed a QB report on profitability by product ("Profitability Report," collectively with the Sales by Item Report, the "QB Reports"), which identified the revenue generated by sales of particular products in a given time period and their percentage of profitability. *Id.* Ex. B. The Profitability Report specifically described the profitability of various types of "Scentos Markers" by retailer, and of "Chalkadoo Sidewalk Tattoos." *Id.* In the Supplemental Brief, the Trustee also continued to seek sanctions based upon WeVeel's initial production of the 18 Boxes in an allegedly incoherent manner which was inconsistent with how those documents were maintained in the ordinary course of business. *Id.* at 5.

On April 9, 2018, WeVeel filed a reply to the Supplemental Brief ("Supplemental Reply"), which identified errors in the QB Reports and contested their reliability and responsiveness. WeVeel Reply to Supp. ¶¶ 16, 18, 19, 20. The Supplemental Reply did not address the issues raised by the Trustee related to the production of the 18 Boxes.

On April 11, 2018, the Court resumed the hearing on the Motion. ECF 196. In order to clarify the sanctions that the Trustee was still pursuing against WeVeel, and to give WeVeel full

notice and an opportunity to respond, the Court directed the Trustee to provide an itemized list of the remaining grounds for the relief sought. The Court also instructed the Trustee to calculate the amount of sanctions sought. The hearing was continued to May 30, 2018. ECF 198.

On April 25, 2018, the Trustee filed a letter brief ("Letter Brief") identifying the two remaining grounds for sanctions against WeVeel:[9] (1) WeVeel's failure to label documents in the 18 Boxes to correspond to the Trustee's document requests or to produce them as maintained in the ordinary course of business and (2) WeVeel's failure to provide full and complete responses to the Trustee's document requests by withholding responsive sales and financial records. Trustee's Brief Letter 1-5. The Letter Brief only sought reasonable expenses, including attorneys' fees, resulting from the discovery failure and filing the Motion, and did not request that the Court hold WeVeel in contempt or to seek sanctions against Mr. Lane. *See id.* at 1-6. The Trustee described the legal services that she was required to perform as a result of WeVeel's discovery violations, but did not include the amount of sanctions she sought. *Id.* at 6.

On May 7, 2018, WeVeel filed its response, arguing that the Trustee had offered no basis for concluding that the 18 Boxes were not produced as kept in the ordinary course of business. WeVeel Resp. to Letter Brief 3-5. WeVeel further maintained that the QB Reports were not responsive to the Sales Requests because they were not reliable, because QB could not perform queries by product, and because QB tracked receipts and revenue, which are distinct from sales. *Id.* at 7-10.

On May 29, 2018, the day before the continued hearing, the Trustee filed another reply brief ("Second Reply Brief") arguing, *inter alia*, that WeVeel failed to establish that the boxes of documents sent from Mr. Lane to the Morrisville Office, which were then kept in storage, were

---

[9] The Trustee preserved her right to seek additional sanctions at a later date.

produced as originally maintained in the ordinary course of business prior to their entry into storage. ECF 200; Trustee Reply to WeVeel Response 2. The Trustee also represented that she would file a fee petition in the event that the Court decided to allow sanctions, and contested WeVeel's allegation in its prior response that the Trustee had refused to share a transcript of one of the hearings with WeVeel. *Id.* at 1-3.

On May 30, 2018, the parties resumed the hearing on the Motion. Mr. Pecci again asserted that, prior to 2015, WeVeel had no record of sales by item. Tr. May 30 Hrg. 20:13-14; 42:1-5. Rather, because WeVeel operated on a purely cash in, cash out basis, it only maintained raw general purchase orders, which it produced in the 18 Boxes. *Id.* at 19:19 – 20:19. Mr. Pecci testified that WeVeel did not have a formal accounting system. *See id.* at 41:9 – 42:5 (explaining that as an invoice came in, money would go out and that WeVeel had no rhyme or reason to its billing scheme.) According to Mr. Pecci, because WeVeel did not record sales by item until 2014 or 2015, it had no reason to go back and use or enter the historical raw data into QB that Mr. Lane had mailed to Mr. Pecci in 2014. *Id.* at 20:16-19.

Both Mr. Pecci, as well as general counsel for WeVeel, Sean Kemp, who identified the responsive documents in the 18 Boxes for the Trustee following the February 14 hearing, provided additional testimony about the condition of the 18 Boxes. Mr. Pecci testified that the 18 Boxes consisted of two sets of documents. *Id.* at 37:2-7. The first set had been mailed to WeVeel from Mr. Lane in 2014 ("Jason Lane Boxes"). *Id.* The Jason Lane Boxes were stored in a cabinet with old records. *Id.* at 29:25 – 30:3. Mr. Pecci had not disturbed those documents since receiving them and turned them over to the Trustee in the same order in which he kept them at the Morrisville Office. *Id.* at 37:2-7. However, Mr. Pecci had no idea how Mr. Lane had maintained them prior to mailing them, and WeVeel never produced Mr. Lane to testify. *Id.* at

29:18-19; 30:20-23; 31:1-4. The second set consisted of WeVeel's business records created

subsequent to WeVeel moving its operations from Texas to Pennsylvania ("Pennsylvania

Boxes"). *Id.* at 37:8-15. Mr. Pecci transferred those records from file folders in file cabinets to

the 18 Boxes without any independent reorganization on his part. *Id.* at 36:22-25; 37:8-12; 41:2-

4; 54:18 – 55:6.

According to Mr. Kemp, he did not go through a single box without finding at least one

responsive document. *Id.* at 88:1-18. The 3,100 documents that he labeled for the Trustee

represented the subset of documents he knew with absolute certainty were responsive to the

Trustee's Discovery Request. *Id.* at 59:15 – 60:19. He did not label documents he found

ambiguous, but acknowledged some could have been responsive. *Id.* at 60:1 – 61:18. He further

admitted that while certain types of documents, such as shipping or purchase orders, tended to be

bulked together, the 18 Boxes did not have a discernable organizational system in the sense that

an employee seeking a particular document, like a 2014 Chase bank statement, would have

known where in the Boxes to find it. *Id.* at 82:19-21; 84:3-25.

Co-counsel for the Trustee, Colleen Heckman, who oversaw the review of the 18 Boxes

and reviewed many herself, testified that she did not find the 18 boxes to be organized. *Id.* at

101:16-18. Documents from different years were in different boxes and scattered in no particular

order. *Id.* at 101:20-24. Neither she nor her law clerks found any discernable sales information

from 2010, 2011, or 2012, other than a few shipping packing invoices. *Id.* at 100:22-25; 101:4-9.

She realized there was a problem with the document production when she noticed that, while

some of the documents were potentially responsive, not many were particularly useful to the

Trustee. *Id.* at 102:17-24. She had been looking for sales records, which she had been told were

in the 18 Boxes, but none were found. *Id.*

14

Concluding that the QB Reports were clearly responsive to the Sales Requests, the Court indicated that it intended to sanction WeVeel for withholding them.[10] *Id.* at 108:2-3. Regarding the 18 Boxes, the Court further indicated that, because WeVeel intentionally misrepresented to the Trustee that she would find responsive sales and financial information in the 18 Boxes, it was inclined to allow the Trustee to recover fees for time spent on that initial review. *Id.* at 105:9 – 106:21.

The Court instructed the Trustee to prepare a fee petition so that WeVeel could respond with any objections to the reasonableness of the fees requested. *Id.* at 108:23 – 109:16. Both parties were invited to submit letter briefs addressing whether the Trustee should be able to recover 100% of the expenses incurred in its initial review of the 18 Boxes or a smaller percentage. *Id.* The Court clarified that, if it awarded the Trustee her fees and expenses for reviewing the 18 Boxes, she would only be entitled to those fees and expenses attributable to the initial review, not later analysis of the 18 Boxes with regard to other potentially relevant documents. *Id.* at 106:21 – 107:11.

On July 5, 2018, the Trustee filed her letter brief and fee petition ("Fee Petition") seeking $88,465.00 in attorneys' fees and $1,608.88 in costs for the following services incurred after the May Orders were entered: the Trustee's attempts to obtain the sales and financial information requested by the Trustee, and compelled to be produced by the Court; the Trustee's initial review of the largely unresponsive documents in the 18 Boxes; subpoenaing WeVeel's retail customers in order to obtain financial records that WeVeel refused to produce; legal research; drafting the

---

[10] During the hearing, WeVeel focused all of its arguments regarding WeVeel's withholding of the QB Reports on the responsiveness of the QB Reports to the Sales Requests and failed to provide any substantial justification for the withholding of such documents from the Trustee.

Motion, Reply Brief, Supplemental Brief, Letter Brief, Second Reply Brief, and Fee Petition; and

attendance at the related hearings. Trustee Fee Petition Brief 1, 10, Ex. A, Ex. B.

On July 17, 2018, WeVeel filed its objection to the Fee Petition ("Fee Objection"). ECF

205. WeVeel also attached a proposed markup of the time sheets of the Trustee's counsel

("Markup") which sought to strike or reduce a significant portion of the time entries based upon

WeVeel's ten objections to the Fee Petition. Fee Obj. Ex A. Recognizing that the Court had

already expressed its intent to sanction WeVeel for withholding the QB Reports in violation of

the May Orders, WeVeel focused its arguments on challenging the Trustee's assertion that the 18

Boxes were produced in a disorganized manner. *Id.* at 3-7. Accordingly, WeVeel requested "that

the Court award no more than $24,689.00 in fees and no more than $558.88 in expenses by way

of sanction for the failure to initially produce certain financial records, including WeVeel's

QuickBooks files." *Id.* at 16.

## III.    DISCUSSION

The Trustee argues that, because WeVeel withheld QB Reports in violation of the May

Orders, Rule 37(b)(2)(C) entitles her to recover fees and expenses resulting from that violation.

Trustee Fee Petition Brief 8. She also contends that Rule 37(a)(5)(A) entitles her to recover fees

and expenses associated with bringing the Motion. *Id.* at 7. Furthermore, the Trustee maintains

that she should be awarded fees and expenses in connection with her review of the 18 Boxes,

asserting that they were produced in a disorganized manner, without labeling the contents, in

violation of Federal Rule of Civil Procedure 34 ("Rule 34"). *Id.* at 3.

WeVeel continues to challenge the accuracy of the QB Reports and argue that, because

the QB Reports track receipts instead of sales and cannot be searched for specific products or

generate product-specific reports, they were not responsive to the Sales Requests. *See* Fee Obj. 3

16

n. 1. WeVeel also maintains that it produced the 18 Boxes exactly as they were kept in the ordinary course of business as Rule 34(b)(2)(E)(i) permits, preventing the Court from using the manner of their production as a basis for sanctions. *Id.* at 4-7. WeVeel submitted ten specific objections to the reasonableness of the Trustee's attorneys' fees and a general objection to the requested costs. *See id.* at 8-16.

The Court concludes that, because the QB Reports contain sales information about specific products, including Scentos Markers and Sidewalk Tattoos, detail specific sales transactions, and identify the volume and unit price of particular products sold, the QB Reports were clearly responsive to the Trustee's Sales Requests. Because WeVeel was not substantially justified in withholding these QB Reports, WeVeel violated the May Orders directing it to provide full and complete responses to the Trustee's document requests by failing to initially produce them. The Trustee, therefore, may recover reasonable fees and expenses incurred as a result of this violation pursuant to Rule 37(b)(2)(C). In addition, the Trustee may recover reasonable fees and expenses in bringing her Motion pursuant to Rule 37(a)(5)(A) because (1) at the February 14, 2018 hearing, the Court granted the Trustee's Motion with regard to her request that WeVeel be compelled to produce sales and financial records such as the QB Reports; (2) WeVeel subsequently produced the QB Reports; and (3) WeVeel was not substantially justified in withholding the QB Reports.

The Court further concludes that, although WeVeel ultimately did not meet its burden of establishing that the Jason Lane Boxes were produced as kept in the ordinary course of business, there is no legal basis to sanction WeVeel under Rule 37 for a Rule 34 violation. Moreover, WeVeel subsequently organized and labeled all of the documents in the 18 Boxes, including the Jason Lane Boxes, which corrected the Rule 34 violation.

## A. Applicable Legal Standards

Pursuant to Rule 37(a)(5)(A),[11] if a motion to compel discovery is granted, or further

disclosure is provided after the motion was filed, the court *must* require the offending party, the

advising attorney, or both, to pay the movant's reasonable fees and expenses incurred in making

the motion, including attorney's fees, unless (i) the movant filed the motion before attempting in

good faith to obtain the disclosure or discovery without court action; (ii) the offending party's

nondisclosure or objection was substantially justified;[12] or (iii) other circumstances make an

award of expenses unjust. The non-moving party bears the burden of showing that its response or

objection to the discovery was substantially justified or that other circumstances make an award

unjust. *Lightstyles, Ltd. v. Marvin Lumber & Cedar Co.,* No. 1:13-CV-1510, 2015 U.S. Dist.

LEXIS 87049, at *4 (M.D. Pa. July 6, 2015).

According to Rule 37(b)(2)(A), if a party fails to obey an order to provide or permit

discovery, the court where the action is pending may issue further just orders, including orders

(i) directing that matters embraced in the order be taken as established as the prevailing party

claims; (ii) prohibiting the disobedient party from supporting or opposing designated claims or

defenses; (iii) striking pleadings in whole or in part; (iv) staying further proceedings until the

order is obeyed; (v) dismissing the action or proceeding in whole or in part; (vi) rendering a

default judgment against the disobedient party; or (vii) treating as contempt of court the failure to

obey an order. Rule 37(b)(2)(C) directs that instead of or in addition to the sanctions described

above, the court *must* order the disobedient party, the advising attorney, or both to pay the

---

[11] Rule 37 is made applicable to bankruptcy proceedings pursuant to Fed. R. Bankr. P. 7037.

[12] When the text of a sanction rule provides that parties may be sanctioned if their behavior lacks substantial justification, courts must make express findings as to whether the offending party's conduct was substantially justified. *Deville v. Givaudan Fragrances Corp.,* 419 Fed. Appx. 201, 208 (3d Cir. 2011) (citing *Grider v. Keystone Health Plan Cent., Inc.,* 580 F.3d 119, 139 (3d Cir. 2009)). Therefore, sanctions may not be applied under Rule 37 without considering whether the sanctioned conduct was substantially justified. *Id.*

reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust. That the disobedient party later provides further discovery in response to a subsequent order compelling production does not remedy or excuse the initial non-compliance with the earlier discovery order. *See Olick v. Kearney (In re Olick),* Chp. 7 Case No. 07-10880ELF, Adv. Nos. 07-052ELF, 07-060ELF, 2007 WL 2712092, at *2 (Bankr. E.D. Pa. Sept. 12, 2007).

A party is substantially justified in failing to produce required discovery when a reasonable person would conclude that parties could differ as to whether disclosure was required. *Lightstyles,* 2015 U.S. Dist. LEXIS 87049, at *4 ("The test of substantial justification is satisfied if there exists a genuine dispute concerning compliance."); *Johnson v. Fed. Express Corp.,* No. 1:12-CV-444, 2014 WL 65761, at *1 (M.D. Pa. Jan. 8, 2014) ("Substantial justification for the failure to make a required disclosure means 'justification to a degree that could satisfy a reasonable person that parties could differ as to whether the party was required to comply with the disclosure request.'"); *Berks Behavioral Health, LLC v. St. Joseph Reg'l Health Network (In re Berks Behavioral Health, LLC),* 511 B.R. 55, 60 (Bankr. E.D. Pa. 2014). In addition, good faith alone does not constitute a substantial justification, as neither Rule 37(a)(5)(A) nor Rule 37(b)(2)(C) requires a finding of bad faith or intentional wrongdoing to justify awarding sanctions, especially if the deficient discovery severely impacted the party seeking discovery. *Lightstyles,* 2015 U.S. Dist. LEXIS 87049, at *11 (citing *Tracinda Corp. v. DaimlerChrysler AG,* 502 F.3d 212, 242 (3d Cir. 2007)); *Pugliese v. County of Lancaster,* No. 12-CV-07073, 2014 WL 5470469, at *2 (E.D. Pa. Oct. 29, 2014); *Montana v. County of Cape May Bd. of Freeholders,* No. 09-755, 2013 US Dist. LEXIS 189464, at *9-10 (D. N.J. Sept. 20, 2013). Where withheld documents are clearly relevant and discoverable, parties are not substantially

19

justified in failing to disclose them. *Lifetouch Nat'l Sch. Studios, Inc. v. Roles,* No. 3:15-cv-234,

2016 WL 7322340, at *6 (W.D. Pa. Dec. 15, 2016).

Equitable factors, such as the severity of the transgression, may inform whether other

circumstances make an award of sanctions unjust or warrant reducing the degree of the sanction.

*Tracinda Corp.* 502 F.3d at 242; *Lightstyles,* 2015 U.S. Dist. LEXIS 87049, at *5. For instance, a

sanctions award would be considered unjust if granted in response to a motion to compel

production of documents which the moving party had never initially requested through

discovery. *Lifetouch,* 2016 WL 7322340, at *6. Awarding monetary sanctions could also be

considered unjust if the sanctioned party would have no ability to pay or no assets with which to

pay. *Lightstyles,* 2015 U.S. Dist. LEXIS 87049, at *12-13; *Bortex Indus. Co. v. Fiber Optic

Designs, Inc.,* 296 F.R.D. 373, 389 (E.D. Pa. 2013).

### B. Sanctions Should Be Imposed Against WeVeel for Withholding the QB Reports Pursuant to Rule 37(b)(2)(C)

In considering the Trustee's request that sanctions be imposed against WeVeel under

Rule 37(b)(2)(C), the Court finds that WeVeel violated the May Orders when it withheld the QB

Reports. As discussed *supra,* the Sales Requests specifically requested that WeVeel produce all

documents which record, refer, reflect, or relate to the distribution or *sales* of Scentos Markers,

Sidewalk Tattoos, Kindercrafts, or Best Friends products, as well as WeVeel's sales by dollar

and unit volume for each of the products sold. Mot. for Sanc. Ex. B First Set of Doc. Requests

for Defendant WeVeel, at ¶¶ 6, 9, 12, 15, 18. The 2015-2016 QB Sales by Item Report

references details of specific sales transactions, including the name of the product sold (e.g.,

"Scentos Scented Mini Ballpoint Pen," "Scentos Party Bubbles," "Scentos Printed Marker,"

etc.), the customer, the quantity of the product sold, the date the transaction took place, the sales

price per unit, and the final sales total for that transaction. Trustee Supp. Brief Ex. A. The 2015-

2016 QB Profitability Report shows the revenue generated by specific WeVeel products and their percentage of profitability for that time period. *Id.* Ex. B. These documents clearly are responsive to the Sales Requests.

The Court rejects WeVeel's argument that the QB Reports' alleged questionable reliability makes them non-responsive. Even if the QB Reports contained some errors and were unverified, they remained relevant and clearly responsive to the Sales Requests. WeVeel has cited no authority, and this Court has found none, justifying withholding otherwise responsive documents on the basis that the producing party has not established or verified their complete accuracy. WeVeel may challenge the accuracy and reliability of the QB Reports at trial if the Trustee seeks to admit them, but it had no right to conceal and withhold them from the Trustee.

WeVeel's assertion that the QB Reports were non-responsive to the Sales Requests because they track revenue, not sales, is disingenuous. WeVeel argues that the QB Reports constitute accounting records, which serve a different purpose than sales records. WeVeel's Reply to Supp. ¶ 3. According to WeVeel, accounting records track receipts to determine what invoices are outstanding or paid while sales records reflect "who bought what." *Id.* As a result, according to WeVeel, because QB does not have the capability to track the quantity of specific products sold, the QB Reports were not responsive to the Trustee's request for sales information. *Id.* at ¶ 4. However, the QB Sales by Item Report specifically includes the quantity of products sold, to whom, and for how much. *See* Supp. Brief Ex. A. WeVeel's far-fetched attempt to make a distinction between revenue and sales fails because, regardless of general distinctions, these *particular* QB Reports *do* contain information about sales transactions and money generated from sales of particular products.

WeVeel also makes the absurd argument that the QB Reports were non-responsive because they included sales information for other products in addition to the four at issue: Scentos Markers, Sidewalk Tattoos, Kindercrafts, or Best Friends.[13] *See* WeVeel's Reply to Supp. ¶¶ 4, 13, 14. The Trustee specifically sought sales information for these four products and the QB Reports contain detailed sales information for at least some of these products, including Scentos Markers[14] and Sidewalk Tattoos, making them directly responsive to the Sales Requests. Furthermore, the Sales by Item Detail Report shows sales by dollar and unit volume of various WeVeel products, making it directly responsive to the Trustee's document request for sales by dollar and unit volume for each of WeVeel's sold products. *See* Mot. for Sanc. Ex. B First Set of Doc. Requests for Defendant WeVeel, at ¶ 18. If WeVeel did not want to reveal sales information about products not named in the Sales Requests, or thought the Trustee's requests were too broad, it could have attempted to work out a compromise with the Trustee. Of course, WeVeel also could have sought a protective order from this Court. What WeVeel was absolutely not entitled to do, and what it clearly did do, was misleadingly represent that it had produced all responsive documents.

WeVeel's position that the QB Reports were not responsive becomes even weaker in light of the documents it *did* view as responsive, including "raw data" such as random purchase orders with no discernable information about the specific products sold, random bank statements

---

[13] The complaint alleges, in relevant part, that Scentos, Sidewalk Tattoos, Kindercrafts, and other products constitute Atomica property fraudulently transferred from the Debtor to WeVeel, and that the Trustee is entitled to recover any proceeds derived from the wrongful sale of such products. ECF 49; Compl. ¶¶ 87, 88. Therefore, sales information about Scentos products, Sidewalk Tattoos, and Kindercrafts are directly relevant to the Trustee's fraudulent transfer case. WeVeel may try to prove to the Court at trial that these and other products do not actually constitute Atomica property, but may not unilaterally withhold discovery containing information directly relevant to products and product lines the Trustee alleges were fraudulently transferred from the Debtor to WeVeel.

[14] To the extent that WeVeel believes the QB Reports were not responsive to the initial Sales Requests because they only sought information about Scentos Markers rather than all Scentos products, the Court finds that the QB Reports would still have been responsive because they *do* include sales information about Scentos Markers specifically, as well as about Sidewalk Tattoos.

referencing payments for unknown products, isolated invoices, order forms for WB Mason office supplies, shipping documents, packing lists, or documents written almost entirely in Chinese. *See* Trustee's Supp. Brief 7 n. 5, Ex. G; Opp. Ex. F-I; Trustee's Reply to Opp. 9; Tr. May 30 Hrg. 69:9-11; 73:13-22; 82:19-23. To assert that such documents were responsive and that the QB Reports were not is ridiculous.

With respect to whether WeVeel has demonstrated that it was substantially justified in withholding the QB Reports, the Court notes that WeVeel has never even argued that it was substantially justified in withholding the QB Reports. Rather, it has only focused its arguments on the responsiveness of the QB Reports. *See* WeVeel's Reply to Supp. ¶¶ 3-5, 13-22; WeVeel Resp. to Letter Brief 6-10; Fee Obj. 3.

In evaluating whether WeVeel was substantially justified in withholding the QB Reports, the Court must determine whether a reasonable person could conclude that disclosure of the QB Reports was not required. In making this determination, the Court notes that the resolution of the Trustee's fraudulent transfer claim in this adversary proceeding hinges on whether the Trustee can prove that certain products originally developed and/or sold by the Debtor were transferred to WeVeel. In the event that the Trustee succeeds in proving this to the Court, the Trustee will need to demonstrate the extent to which WeVeel has profited from such transfer. *See* Compl. ¶¶ 252 (seeking a judgment against WeVeel for avoidance of the alleged fraudulently transferred Atomica property or its equivalent value), 274-77 (seeking in Count VIII for unjust enrichment a judgment in the amount of the financial benefit WeVeel received as a result of the alleged fraudulent transfer of Atomica products). It is, therefore, critical for the Trustee to obtain discovery about the sales of various WeVeel products which were allegedly transferred by the

Debtor to WeVeel. Since February 2017, the Trustee has diligently attempted to obtain sales information about these products from WeVeel.

Based upon the foregoing, no reasonable party could conclude that the QB Reports did not have to be produced. First, as discussed *supra,* the QB Reports provided a vast amount of critical sales information about products the Trustee had specifically mentioned in the Sales Requests. Second, the Trustee has consistently requested sales and financial records since she first served her document requests over a year and a half ago. It is unimaginable that a reasonable party could possibly conclude that the QB Reports did not constitute sales and financial records. Any reasonable party would have understood that the QB Reports were essential to the Trustee's case. Fairly considering WeVeel's responsiveness arguments, no reasonable person could conclude that the QB Reports were not responsive to the Sales Requests. Accordingly, the Court finds that WeVeel was not substantially justified in withholding the QB Reports. Pursuant to Rule 37(b)(2)(C), the Trustee, therefore, is entitled to recover reasonable fees and expenses caused by WeVeel's failure to produce the QB Reports in violation of the May Orders.

The Court is constrained to note that, not only was WeVeel not substantially justified in withholding the QB Reports, but it appears, based upon WeVeel's actions during the last 18 months, that WeVeel deliberately acted in bad faith by withholding the QB Reports. Indeed, WeVeel has consistently done everything in its power to delay and stonewall discovery in this case. WeVeel initially failed to produce any documents in response to the Trustee's initial Discovery Request in February 2017, asserted that it had no responsive documents, and filed a motion to stay the discovery process while the Court adjudicated its baseless summary judgment motion. After WeVeel's summary judgment motion was denied and the Court entered the May Orders requiring WeVeel to respond to the Trustee's Discovery Request, WeVeel initially stated

that it would be "prohibitively difficult to produce the financial and sales records that were being requested," but then subsequently represented to the Trustee that responsive sales documents could be found in the 18 Boxes located at the Morrisville Office. However, it turned out there were no responsive sales documents among the 14,000 unlabeled, disorganized documents in the 18 Boxes, which were not produced until October 2017. It was later discovered that only 20% of the documents produced by WeVeel in the 18 Boxes actually were responsive to any of the Trustee's discovery requests. Even after the Trustee significantly reduced the scope of her requests in an effort to engage in mediation, WeVeel continued to refuse to produce any financial documents to the Trustee and was later caught withholding critical financial documents. Throughout this entire period, WeVeel consistently stated that it did not have any additional responsive sales or financial records, even though it was clear that the QB Reports contained relevant sales information.

It appears, therefore, that, while the Trustee was engaged in extraordinary efforts to obtain the sales and financial information that she needed to prosecute this case, WeVeel intentionally, consistently, and in bad faith, prevented the Trustee from obtaining such information, repeatedly misrepresented that the 18 Boxes contained the requested sales records, and insisted that WeVeel had produced all responsive sales information in its possession. Although a finding of bad faith is not necessary to impose sanctions under Rule 37(b)(2)(C), the Court cannot help but note this preliminary impression given everything that has transpired in this case.

### C. Sanctions Should Be Imposed Against WeVeel, Pursuant to Rule 37(a)(5)(A), for the Reasonable Fees and Expenses Incurred by the Trustee in Bringing the Motion

The Court now turns to whether sanctions should be imposed against WeVeel, pursuant to Rule 37(a)(5)(A), for the reasonable fees and expenses incurred by the Trustee in bringing the

25

Motion. It is undisputed that the Trustee requested in her Motion that WeVeel be compelled to produce sales and financial records responsive to the Sales Requests, such as the QB Reports.[15] *See* Mot. for Sanc. ¶ 65. It is also undisputed that WeVeel subsequently produced the QB Reports, which were responsive to the Sales Requests. Furthermore, the Court granted the Motion with regard to the Trustee's request that WeVeel be compelled to produce sales and financial records responsive to the Sales Requests. Tr. Feb. 14 Hrg. 52:6-11; 54:8-11; 60:22-24. Based upon either of these circumstances, the Trustee is entitled to be reimbursed for reasonable fees and expenses incurred in connection with bringing the Motion unless WeVeel can demonstrate that: (i) the Trustee filed the Motion before attempting in good faith to obtain the QB Reports without Court action; (ii) WeVeel's withholding of the QB Reports was substantially justified; or (iii) other circumstances make an award of fees and expenses unjust.

It is clear that the Trustee acted in good faith to obtain the QB Reports without Court action. Even after discovering that WeVeel had misrepresented that basic sales records and financial data were in the 18 Boxes, she still gave WeVeel multiple opportunities throughout December 2017 to produce any sales records in its possession or control, including the QB Reports, without Court intervention. WeVeel foolishly refused to do so and now appropriately faces consequences for that refusal. The second factor has also been satisfied since the Court

---

[15] Although captioned a "Motion for Sanctions," the Trustee's Motion was, in effect, a motion to compel production of responsive sales information WeVeel had continuously withheld over the previous several months. *See* Mot. for Sanc. ¶ 48. The clear goal of the Motion was to compel WeVeel to produce the requested sales information. *See id.* at ¶¶ 58 (arguing WeVeel Defendants should be held in contempt until they produce the requested sales and financial information), 59 (arguing that monetary sanctions for civil contempt are intended to coerce WeVeel into compliance with the Court's orders), 61 (requesting a daily monetary sanction until WeVeel produced the pared down sales and financial information), 62 (arguing a daily fine was warranted to incentivize WeVeel to provide documents needed to proceed to mediation). Furthermore, the Motion requested that if the Court chose not to hold WeVeel in contempt, it still compel WeVeel to produce the requested sales and financial information. *Id.* at ¶ 65. Therefore, the Court construes the Motion as a motion to compel. *See Pugliese*, 2014 WL 5470469, at *2 (treating a request for spoliation sanctions as the equivalent of a motion to compel for purposes of issuing sanctions pursuant to Rule 37(a)(5)(A)).

already has determined that WeVeel was not substantially justified in withholding the QB

Reports. Finally, WeVeel has not argued that, nor can the Court can conceive of, any other

circumstances which would make an award of expenses unjust.

The Trustee, therefore, is entitled to recover reasonable fees and expenses in bringing the

Motion pursuant to Rule 37(a)(5)(A).

### D. Sanctions Cannot Not Be Imposed Against WeVeel Pursuant to Rule 37(b)(2)(C) for WeVeel's Violation of Rule 34

Although the Court ultimately concludes that WeVeel violated Rule 34(b)(2)(E)(i) with

regard to the Jason Lane Boxes, the appropriate sanction for such violation would have been for

the Court to order WeVeel to organize and label the documents in the Jason Lane Boxes to

correspond to the categories in the discovery request.[16] *See Williams v. Taser Intern., Inc.,* No.

1:06-CV-0051-RWS, 2006 WL 1835437, at *7 (N.D. Ga. June 30, 2016) (noting that were the

---

[16] According to Rule 34(b)(2)(E)(i), a party responding to document requests has the option of producing documents as they are kept in the ordinary course of business or labeling the documents to correspond to the categories in the request. Because the Jason Lane Boxes were kept in storage and Mr. Lane never testified about how the Jason Lane Boxes were maintained before they were sent to WeVeel, WeVeel failed to establish that the Jason Lane Boxes were produced as they were maintained in the ordinary course of business. *See Parks, LLC v. Tyson Foods, Inc.,* No. 5:15-cv-00946, 2017 WL 3534993, at *2 (E.D. Pa. Aug. 17, 2017) (producing documents kept in storage without labeling may satisfy Rule 34 so long as evidence is provided that the way the documents are stored has not changed from how they were previously kept in the ordinary course of business before going into storage); *In re Sulfuric Acid Antitrust Litig.,* 231 F.R.D. 351, 363 (N.D. Ill. 2005) ("This is not to say that production of documents as they are kept in storage is never proper under Rule 34(b). The discovered party must…show that the way in which the documents are kept has not changed from how they were kept in the usual course of business.").

With regard to the Pennsylvania Boxes, although the Trustee presented evidence that the Boxes were generally disorganized, Pecci provided credible testimony at the May 30, 2018 hearing that, in transferring records from file folders to the boxes in the conference room, he kept all documents in the same order and engaged in no independent organization, which is sufficient to satisfy Rule 34(b)(2)(E)(i). Tr. May 30 Hrg. 37:8-13; 54:18 – 55:6; 101:16-24; 103:2-3; *see Bala City Line, LLC v. Ohio Sec. Ins. Co.,* No. 16-cv-4249, 2017 WL 3443218, at *3 (E.D. Pa. Aug. 9, 2017) ("Plaintiff's assertion – that Defendant has not produced its documents as kept in the usual course of business – is devoid of any particularized factual basis for this claim."); *Karakozova v. Trustees of Univ. of Pennsylvania,* No. 09-02564, 2011 WL 238711 at *2 (E.D. Pa. 2011) ("Defendant represents that its documents have been produced as they are kept in the usual course of business. Absent evidence to the contrary, I find the defendant has fulfilled its obligation to plaintiff with respect to the organization of the documents produced."); *Thompson v. Altoona Housing Authority,* No. 3:10-CV-312, 2011 WL 7037128, at *2 (W.D. Pa. Nov. 3, 2011) ("Plaintiffs have provided the Court with no evidence to show that the documents were not produced as they were kept in Defendants' usual course of business."); *In re G-I Holdings Inc.,* 218 F.R.D. 428, 439 (D. N.J. 2003) ("the Government never alleges that Debtors' productions were so disorganized as to indicate that documents were not produced as kept in the regular course of business.").

27

Court to conclude the producing party had failed to comply with Rule 34, the Court would

require it to organize and label the produced documents); *Mizner Grand Condominium Ass'n,*

*Inc. v. Travelers Property Cas. Co. of America,* 270 F.R.D. 698, 701 (S.D. Fla. 2010) (ordering

the noncompliant producing party to label its production in a manner corresponding to the

requesting party's document requests); *SEC v. Collins & Aikman Corp.,* 256 F.R.D. 403, 413

(S.D. N.Y. 2009) (ordering the noncompliant producing party to separate out and provide

requesting party with only those documents responsive to particular requests); *Armor Screen*

*Corp. v. Storm Catcher, Inc.,* No. 07-81091-Civ, 2009 WL 291160, at *2 (S.D. Fla. 2009)

(ordering producing party to supplement its document production response with an index of

which documents available for inspection are responsive to which requests); *Scripps Clinic &*

*Research Foundation v. Baxter Travenol Laboratories, Inc.,* No. 87-140-CMW, 1988 WL

70013, at *4 (June 21, 1988) (finding it appropriate to order the producing party to index 15

boxes of documents to correspond to document requests).  However, WeVeel already did this

following the February 14, 2018 hearing. Trustee's Supp. Brief 6. The Trustee has not cited, nor

has the Court found, any basis for imposing sanctions against WeVeel pursuant to Rule

37(b)(2)(C) for a Rule 34 violation. Therefore, the Court will deny the Trustee's request that

WeVeel be sanctioned pursuant to Rule 37(b)(2)(C) for its violation of Rule 34(b)(2)(E)(i).

### E.  WeVeel's Objection to the Reasonableness of the Trustee's Fees and Expenses

The Court will now consider WeVeel's objections to the Trustee's Fee Petition. By way

of background, the petitioner bears the initial burden of demonstrating the reasonableness of the

requested fees by submitting evidence supporting the hours worked and rates claimed.

*Endurance Am. Specialty Ins. Co. v. Hospitality Supportive Sys. LLC,* No. 17-3983, 2018 U.S.

Dist. LEXIS 136922, at *9 (E.D. Pa. Aug. 14, 2018); *Community Ass'n Underwriters of*

*America, Inc. v. Queensboro Flooring Corp.,* No. 3:10-CV-1559, 2016 WL 1076910, at *2

(M.D. Pa. Mar. 18, 2016). While the lodestar method, which multiplies hours worked by the

attorney's hourly billing rate, is generally presumed to result in a reasonable fee, the opposing

party may object on the basis that an adjustment is warranted. *Endurance*, 2018 U.S. Dist.

LEXIS 136922, at *9; *Tangible Value, LLC v. Town Sports Intern. Holdings,* No. 10-1453-MAS-

TJB, 2014 WL 6485972, at *5 (D. N.J. Nov. 19, 2014). Once the petitioner meets its initial

burden, the burden then shifts to the opposing party to challenge "with sufficient specificity to

give fee applicants notice" the reasonableness of the request. *Community*, 2016 WL 1076910, at

*2.

      Courts may not decrease fee awards based on factors not raised by the adverse party if the

petitioner has met its initial burden.[17] *Id.*; *Stein v. Foamex,* 204 F.R.D. 270, 271 (E.D. Pa. 2001).

However, once the opposing party raises objections to the reasonableness of the fees requested,

courts have significant discretion to adjust the award in light of those objections, considering

factors such as time spent and labor required, the complexity of the legal issues, the customary

fee in the community, the nature and length of the professional relationship, and awards in

similar cases. *Community*, 2016 WL 1076910, at *2; *Tangible Value,* 2014 WL 6485972, at *5.

      In determining reasonableness, the court must closely scrutinize the request to ensure the

fees do not exceed a reasonable amount. *Endurance,* 2018 U.S. Dist. LEXIS 136922, at *9. In

particular, when awarding fees, courts must conduct "a thorough and searching analysis" to

decide whether the hours were reasonably expended for each purpose described, and exclude

those which are excessive, redundant, or unnecessary. *Id.* at 14. This task involves evaluating the

---

[17] The Court notes that WeVeel is not objecting to the hourly billing rates of Trustee's counsel. Fee. Obj. 14 ("there
had never been a suggestion that the Trustee's counsel's hourly rate was improper."). Therefore, the Court may not
adjust their hourly billing rates.

billing records "line by line" and a fair amount of "judgment calling" based on the court's

experience. *Id.*; *Tangible Value,* 2014 WL 6485972, at *5. The essential goal in fee shifting is to

do "rough justice," not to achieve "auditing perfection." *Goodyear Tire & Rubber Co. v. Haeger,*

137 S. Ct. 1178, 1187 (2017). Therefore, a court may take into account its sense of a suit, use

estimates in calculating an attorney's time, and decide that all or a percentage of a category of

expenses were incurred because of the discovery failure. *Id.* In the Rule 37 context, the amount

of monetary damages must be specifically related to the expenses incurred due to the non-

complying party's discovery violations. *Martin v. Brown,* 63 F.3d 1252, 1263-65, n. 15 (3d Cir.

1995); *Barkouras v. Hecker,* No. 06-366(AET), 2007 WL 777664, at *7 (D. N.J. Mar. 12, 2007).

The Trustee has satisfied her initial burden of demonstrating the reasonableness of her

requested fees by attaching her counsel's timesheets to her Fee Petition, which evidence the

hours worked and rates claimed in connection with WeVeel's failure to produce the QB Reports

in violation of the May Orders and bringing the Motion. The burden, therefore, shifts to WeVeel

to challenge the reasonableness of the expenses listed in the Fee Petition.

The Court will now address each of WeVeel's objections to the reasonableness of the

Trustee's Fee Petition.

### i.    Objection 1 – Basic Discovery Time

In its first objection, WeVeel requests that time entries totaling $3,620.00 related to the

logistics of scanning the 18 Boxes be disallowed. *See* Fee Obj. 8, Ex. A. However, upon review

of WeVeel's Markup for this category, it appears that WeVeel also seeks to strike other types of

time entries, including time spent by the Trustee's counsel discussing, researching and writing

letters to WeVeel regarding the lack of financial documents produced by WeVeel. *See id.* Ex. A.

The Court will allow all such time entries since they were incurred as a result of WeVeel's

failure to produce the QB Reports in violation of the May Orders.

30

With regard to the time incurred arranging the scanning logistics of the 18 Boxes, the Court finds that these time entries are reasonable since WeVeel refused to directly produce responsive sales information, including the QB Reports, to the Trustee and, instead, forced the Trustee to make arrangements to scan the 18 Boxes at the Morrisville Office under the guise that they contained financial information. In reality, the crucial financial documents requested by the Trustee were not included in the 18 Boxes, but rather, in the QB Reports. The Court therefore will allow all of the time in this category since the underlying services were incurred as a result of WeVeel's failure to produce the QB Reports in violation of the May Orders.

### ii. Objection 2 – Excessive Document Review Time

In its second objection, WeVeel seeks to reduce time entries totaling $7,600 for reviewing the 18 Boxes by 40% based upon its belief that the 22.8 hours must have included time for analysis because it only took Mr. Kemp 17.5 hours to review the 18 Boxes and create an index of the responsive documents. Fee Obj. 8. The Court disagrees that a 5.3 hour difference is excessive or, on its own, establishes that the Trustee billed for time spent analyzing the documents. The Court finds that spending 22.8 hours to review 14,000 documents in order to locate crucial financial documents promised by WeVeel is reasonable. The Court therefore will allow all of the time in this category since the underlying services were incurred as a result of WeVeel's failure to produce the QB Reports in violation of the May Orders.[18]

### iii. Objection 3 – Document Review Not Warranted by Case Status

In its third objection, WeVeel seeks to disallow a 3 hour time entry with a value of $900.00 which was entered by one of the Trustee's attorneys on December 14, 2017 for

---

[18] Because WeVeel did not produce sales information in the initial document production and misrepresented to the Trustee that she would find sales and financial records in the 18 Boxes, the Trustee essentially was misled into reviewing the 18 Boxes which contained, for the most part, unresponsive documents. *See* Mot. for Sanc. Ex. D, E, F, G, M; Trustee Supp. Brief Ex. D.

"Reviewing 18 boxes of documents." Fee Obj. 9. WeVeel argues that this entry should be disallowed because the Trustee began to focus on the Motion by this point. *Id.* Although the time records reflect that the Trustee began contemplating sanctions on December 13, 2017 based upon the letter that WeVeel had sent that day refusing to provide additional financial information, this fact does not affect the Trustee's right to finish reviewing the 18 Boxes. The Court finds that this time entry is reasonable since it was incurred in order to locate the financial information that WeVeel had said was contained within the 18 Boxes. The Court, therefore, will allow all of the time in this category since the services were incurred as a result of WeVeel's failure to produce the QB Reports in violation of the May Orders.

### iv.    Objection 4 – Preparing Motion for Sanctions and Replies

In its fourth objection, WeVeel seeks to reduce time entries totaling 71.5 hours, with a time value of $22,775.00, by 50% for researching and drafting the Motion and Reply Brief based upon its assertion that such entries were unreasonable. Fee Obj. 9-10. Turning to the Motion, the Trustee requested that the Court hold WeVeel in contempt of Court under Rule 37(b)(2)(A)(ii) for its failure to produce financial information in violation of the May Orders. Mot. for Sanc. ¶¶ 54-64. The Trustee also requested that, in the alternative, the Court sanction WeVeel under Rule 37(b)(2)(C) for its failure to produce financial information in violation of the May Orders and enter an order compelling WeVeel to produce such financial information. *Id.* at ¶ 65. The Trustee spent approximately 43 hours to both research the various grounds for imposing sanctions against WeVeel and draft the 16 page Motion, which contained a comprehensive factual summary of WeVeel's multiple misrepresentations and refusals to produce relevant financial documents, in addition to relevant case law and analysis of the Rule 37 violations. Given the various delay tactics used by WeVeel to withhold crucial financial documents over an 11 month period and the various legal sanctions that the Trustee had to consider in the face of WeVeel's

blatant and continuing violation of the May Orders, the Court finds that all of these entries are

reasonable under Rule 37(a)(5)(A).

With regard to the remaining time entries in this objection, the Trustee spent

approximately 28 hours reviewing WeVeel's response to the Motion and researching and

drafting the Reply Brief. In light of WeVeel's continued insistence that it did not have any

financial documents, the Court finds that it was necessary and reasonable for the Trustee to

devote this time to reviewing and responding to WeVeel's response to the Motion. In addition,

the Court found the Reply helpful because it attached exhibits of WeVeel's Internal Sales

Reports for the Court to review, which confirmed the responsiveness of documents being

withheld by WeVeel. *See* Trustee's Reply to Opp. 3-8, Ex. B.

### v.    Objection 5 – Reviewing Discovery After Motion Filed

In its fifth objection, WeVeel requests that the Court disallow time entries totaling

$8,750.00 related to the Trustee's review of emails containing sales/financial information

because this review occurred after the Motion was submitted and because the emails were

produced as responsive to another document request. Fee Obj. 10.

The Trustee's fortuitous discovery of financial documents (which WeVeel had not

separately produced to the Trustee) attached to certain emails produced to the Trustee justified

the Trustee's subsequent review of all remaining WeVeel emails in order to determine whether

other responsive financial documents were attached to those emails. This review was reasonable

and appropriate, especially in light of WeVeel's continued insistence that it had no other

responsive financial documents to produce. Had WeVeel timely produced all of its financial

information to the Trustee, the Trustee would not have needed to scour all of WeVeel's emails

for hidden financial documents. As a result, the Court will allow all of the time in this category

since the services were incurred as a result of WeVeel's failure to produce the QB Reports in violation of the May Orders.

### vi.    Objection 6 – Duplication of Efforts at Hearings

In its sixth objection, WeVeel requests that the Court disallow time entries totaling $3,000.00 attributable to multiple attorneys appearing at each sanctions hearing. Fee Obj. 10-11. Generally, to award attorneys' fees for court appearances, all professionals attending a hearing must have had a role. *See In re Jefsaba Inc.,* 172 B.R. 786, 800-01 (Bankr. E.D. Pa. 1994). A presence as a mere spectator is not compensable. *In re Johnson & Johnson Derivative Litig.,* No. 10-2033(FLW), 2013 WL 11228425, at *25 (D. N.J. June 13, 2013). Unless the magnitude of a case demands it, the attendance of additional counsel representing the same interests as counsel actually conducting the litigation is wasteful and should not be included in a request for counsel fees. *Id.*

The Trustee's lead attorney, Casey Green, handled the sanctions hearing with the assistance of Ms. Heckman, who had appropriately spent more than double the amount of time that Mr. Green did researching the law on sanctions, drafting the relevant pleadings, and reviewing the discovery, based upon her lower hourly rate. *See* Trustee Fee Petition Brief Ex. A Time Chart. Given her extensive knowledge of the case, the Court finds that it was reasonable for Ms. Heckman to attend each hearing to assist Mr. Green, and particularly with respect to responding to WeVeel's arguments and the Court's questions.

The same is not true, however, for their colleague, Constance Tang. Ms. Tang only billed 10 hours on the Motion. Trustee Fee Petition Brief Ex. A Time Chart. Prior to the first hearing, which she attended, she spent approximately five hours researching motions for sanctions, one hour starting to outline the Motion, and a half hour proofreading the final Motion. It is not clear whether Ms. Tang's participation was necessary at either of the sanctions hearings. The Trustee

34

accordingly has not met her burden to justify Ms. Tang's attendance at those hearings. Therefore,

the Court will disallow the following entries: CT's February 14, 2018 entry for "attend hearing"

($450.00) and CT's April 11, 2018 entry for "attend hearing" ($450.00). The Court will allow all

of the remaining time in this category since the services were incurred in connection with the

filing of the Motion and as a result of WeVeel's failure to produce the QB Reports in violation of

the May Orders.

**vii.    Objection 7 – Time Spent to Review QuickBooks, Tax Returns,
and Financial Statements**

In its seventh objection, WeVeel requests that the Court disallow time entries totaling

$3,020.00 for time spent reviewing the QB Reports, Tax Returns, and other financial records

produced in response to the Court's February 14, 2018 order. Fee Obj. 11. According to WeVeel,

the Trustee would have reviewed these in the ordinary course whether produced in response to

the Court's directive or in response to the Trustee's original Sales Requests. *Id.* The Court agrees

with WeVeel's objection that the Trustee should not be compensated for simply reviewing these

financial documents. Petitioners may be compensated for efforts to secure discovery, but not for

reviewing documents they would have reviewed irrespective of the dispute, even if those

documents were the subject of the discovery dispute. *Mosaid Techs. Inc. v. Samsung Elecs. Co.,*

224 F.R.D. 595, 598 (D. N.J. 2004). Shifted expenses shall not include costs which would have

been incurred anyway. *E.M. Sergeant Pulp,* 2015 US Dist LEXIS 170497, at *20. The Trustee

did not incur the expense of reviewing the QB Reports and other records *because of* WeVeel's

failure to initially provide them. Although WeVeel should have produced them far earlier, the

fact that they were subsequently produced does not mean that the Trustee should be reimbursed

for reviewing them. She incurred this expense because she needed to review sales and financial

records in order to prosecute her case. Therefore, in light of WeVeel's objection, the Court will

35

disallow, in their entirety, entries in this category involving the Trustee's review of WeVeel's

QB, financial statements, and tax returns, totaling $2,490.

However, with regard to the Trustee's discussions with Mr. Kemp about QB, the Court

finds that the Trustee would not have incurred these fees if WeVeel had not withheld the QB

Reports in violation of the May Orders. Therefore, the Court will allow most of the entries in this

category which relate to consultations with Mr. Kemp, only reducing CG's February 23, 2018

entry for "internal discussions regarding status of QB review from WeVeel; emails with Sean

Kemp about issues including lack of sales data" slightly to .2 hours ($100) to account for time

spent discussing the status of the QB review.

> ### viii.    Objection 8 – Time Spent After Production of QuickBooks and Financial Records

In its eighth objection, WeVeel requests that the Court reduce time entries totaling

$30,330.00 for any services performed after the February 21, 2018 production of the QB Reports

and other financial records. Fee Obj. 11-13. WeVeel also argues that it "has been appropriately

sanctioned for this conduct by having to pay *its own counsel* for having to respond to the

Trustee's allegations and attend two hearings during this timeframe." *Id.* at 12. Needless to say,

there is no basis in fact or law for WeVeel to be credited for its own counsel fees and expenses

which it incurred as a result of its own discovery violations. Not only is WeVeel's proposition

ludicrous, it demonstrates WeVeel's total disregard for the vast amount of time and work that the

Trustee has had to spend in order to force WeVeel to comply with its discovery obligations, not

to mention the substantial delay that WeVeel has caused in litigating this case.

WeVeel's exposure to sanctions under Rule 37 did not end when it was finally forced to

produce the documents that it had been withholding for almost a year. Rather, WeVeel will be

held responsible for all reasonable expenses incurred by the Trustee as a result of WeVeel's

failure to produce the QB Reports in violation of the May Orders, regardless of when WeVeel actually produced the responsive documents. The Court, therefore, will not disallow any of the time in this category based upon this meritless objection.

### ix.    Objection 9 – Time for Supplemental Briefing

In its ninth objection, WeVeel requests that the Court reduce time entries totaling $9,775.00 by 50% in connection with the Supplemental Brief, which the Trustee prepared and filed after the February 14, 2018 hearing, and the Letter Brief and Second Reply Brief, which the Trustee prepared and filed after the April 11, 2018 hearing. Fee Obj. 13-14. It argues that such briefing was excessive since the Trustee had already received QB Reports, financial statements, and Tax Returns by that point and because the additional briefs repeated arguments already made or which should have already been fully developed. *Id.*

The Court finds that the attorney fees incurred by the Trustee to research and draft the Supplemental Brief were appropriate and reasonable. Given WeVeel's earlier repeated representations that it had no further responsive sales or financial records to produce, it was entirely appropriate for the Trustee to draft a brief to show the Court, in light of the February 21, 2018 production, that those representations were simply not true. *See* Trustee's Supp. Brief 1-4. In fact, the Supplemental Brief was helpful to the Court in determining whether the withheld documents were responsive to the Sales Requests and, in particular, the Court appreciated the ability to review the QB Reports which were attached to the Supplemental Brief. *See id.* Ex. A, Ex. B. In addition, the Supplemental Brief addressed the surprising development that WeVeel had determined that there were only 3,100 responsive documents in the 14,000 documents produced by WeVeel in the 18 Boxes. *Id.* at 6.

With regard to the Letter Brief filed after the April 11, 2018 hearing, the Court notes that it specifically asked the Trustee to submit that brief because it appeared that the Trustee intended

to narrow the grounds for requesting sanctions against WeVeel. In addition, WeVeel had not

responded to all of the grounds for sanctions raised in the Motion, and the Court wanted to make

sure that WeVeel had an opportunity to so. The Court finds that it was not unreasonable for the

Trustee's attorney to take five hours to finish researching the grounds for sanctions and seven

hours to draft the Letter Brief.

Finally, the Court will allow the time spent by counsel to research and draft the Second

Reply Brief, which specifically identified and addressed the deficiencies in production of the

Jason Lane Boxes from storage pursuant to Rule 34. *See* Trustee Reply to WeVeel Response 2

("Michael Pecci merely testified that when Jason Lane left WeVeel, he sent all of WeVeel's

records to WeVeel's Morrisville office, and WeVeel stored the boxes of documents in a

closet…There is no evidence that Mr. Lane haphazardly stored WeVeel's records in this manner

or that he shunned the use of electronic records."). Although WeVeel consistently asserted that it

was not required to organize and label the Jason Lane Boxes because those documents were

turned over in the ordinary course of business, WeVeel was wrong. In the absence of testimony

from Mr. Lane about how those documents were kept before he delivered them to WeVeel,

WeVeel was required to organize and label such documents. Its failure to do so constituted a

violation under Rule 34. The Trustee, therefore, was entitled to incur fees addressing this

violation to the Court since the Court had asked her to update it on all of the potential grounds

for imposing sanctions upon WeVeel. The Court finds that the Trustee spent a reasonable

amount of time fleshing out the grounds for the Rule 34 violation, and will allow all of the time

in this category.

### x.    Objection 10 – Preparation of Fee Petition

In its tenth objection, WeVeel requests that the Court reduce time entries totaling

$6,095.00 by 35% which were attributable to preparation of the Fee Petition. Fee Obj. 14-15.

38

WeVeel argues that the Trustee unnecessarily argued about the lack of organization of the 18 Boxes because it asserts that the Court already had ruled in WeVeel's favor on that issue. *Id.* at 14. WeVeel also asserts that it was unnecessary for Trustee's counsel to justify their hourly rates because WeVeel never contested those rates. *Id.* at 15.

However, with regard to propriety of the Trustee's argument that WeVeel failed to organize the 18 Boxes, the Court specifically invited the Trustee to address whether the Court should grant her an award for some or all of the fees incurred in reviewing the 18 Boxes. Tr. May 30 Hrg. 108:25 – 109:16. In contrast to WeVeel's interpretation of the transcript, the Court had reserved ruling on the issues related to the 18 Boxes pending consideration of the Letter Brief accompanying the Fee Petition and WeVeel's response. Therefore, it was necessary and reasonable for the Trustee to dedicate a portion of the Fee Petition to address whether the Court should allow recovery of the attorneys' fees incurred in connection with the review of the unorganized 18 Boxes.

With regard to the Trustee's justification of her counsels' hourly rates, in general, a party entitled to a fee award is also entitled to reimbursement for reasonable time spent preparing the fee petition. *Community*, 2016 WL 1076910, at \*9. The Court finds that it was reasonable for the Trustee to justify those rates because WeVeel had never indicated that it was not going to contest the hourly rates at the time that the Fee Petition was prepared. By way of background, the law is well settled that the petitioner bears the burden of presenting evidence sufficient to establish the reasonableness of counsel's hourly rate, such as with evidence of the prevailing market rate in light of the character and complexity of the legal services provided, or certifications of individuals who can attest to counsel's education, specialty, and relative experience. *Endurance,* 2018 U.S. Dist. LEXIS 136922, at \*9-10; *Community*, 2016 WL 1076910, at \*2-3; *Tangible*

*Value,* 2014 WL 6485972, at *4-5. Courts often must assess the experience and skill of the requesting party's attorneys and compare their rates to the rates of attorneys with similar skill and experience. *Endurance,* 2018 U.S. Dist. LEXIS 136922, at *10. Because it is the Trustee's burden to present evidence of the reasonableness of her counsels' hourly rates, it was appropriate for Trustee's counsel to seek compensation for time preparing the declarations.

The Court, therefore, will allow the time in this category since the services were incurred in connection with the filing of the Motion and as a result of WeVeel's failure to produce the QB Reports in violation of the May Orders.

### xi.    Expenses

Finally, WeVeel objects to the Trustee's recovery of expenses related to the service of subpoenas on WeVeel's customers because the subpoenas were not issued in an attempt to avoid motion practice. Fee Obj. 15. The Court finds that the Trustee is entitled to recover expenses incurred serving the subpoenas on third parties as a result of WeVeel not providing the requested sales information. Rule 37(b)(2)(C) mandates awarding expenses *caused by* the discovery failure, not simply those incurred trying to avoid motion practice. The Trustee would not have needed to reach out to third parties *but for* WeVeel's deficient responses. *See Tolerico v. Home Depot,* 205 F.R.D. 169, 177 (M.D. Pa. 2002). All of the Trustee's expenses, therefore, are compensable.

### IV.    CONCLUSION

WeVeel's unjustified, continued withholding of crucial financial documents which were directly responsive to the Trustee's Sales Requests has given the Court no choice but to award the Trustee reasonable fees and expenses incurred as a result of non-compliance with this Court's May Orders to produce full and complete discovery. Therefore, the Court will award the Trustee $81,205.00 in fees and $1,608.88 in costs.

Date:    October 4, 2018

_____
Ashely M. Chan
United States Bankruptcy Judge

# EXHIBIT A

Sidkoff, Pincus & Green. P.C.
1101 Market Street, Suite 2700
Philadelphia, PA 19107

# Invoice

| Date | Invoice # |
|------|-----------|
| 7/5/2018 | 18-1181 |

EIN: 23-2480704

**Bill To**

Bonnie Finkel, Esquire
P.O. Box 1710
Cherry Hill, NJ 08034
RE: ATOMICA DESIGN GROUP

| Terms | Case No. |
|-------|----------|
|       |          |



| Date | Atty | Description | Hours | Rate | Amount |
|------|------|-------------|-------|------|--------|
| 7/13/2017 | CG | Discussions with CH about lack of financial docs produced by WeVeel; review of her research; emails with CH regarding same. | 0.4 | 500.00 | 200.00 |
| 7/13/2017 | CG | Draft letter to WeVeel's counsel regarding improper objections to RFPs and complete lack of financial documents; email to CH for review; finalize. | 0.7 | 500.00 | 350.00 |
| 7/13/2017 | CH | Reviewing WeVeel's document production for financial records. | 1.2 | 300.00 | 360.00 |

| Total |
|-------|

| Payments/Credits |
|------------------|

| **Balance Due** |
|-----------------|

Case 14-00333-amc    Doc 209    Filed 10/04/18    Entered 10/04/18 16:44:38    Desc Main
Document      Page 44 of 59
Case 14-00333-amc    Doc 202-1    Filed 07/19/18    Entered 07/19/18 17:02:05    Desc
Case 14-00333-amc    Doc 202-1    Filed 07/05/18    Entered 07/05/18 20:43:30    Desc
Exhibit    Invoice with Notations  Page 2 of 38
Exhibit A-G    Page 3 of 37

Sidkoff, Pincus & Green. P.C.
1101 Market Street, Suite 2700
Philadelphia, PA 19107

# Invoice

| Date | Invoice # |
|------|-----------|
| 7/5/2018 | 18-1181 |

EIN:  23-2480704

**Bill To**

Bonnie Finkel, Esquire
P.O. Box 1710
Cherry Hill, NJ 08034
RE: ATOMICA DESIGN GROUP

| | Terms | Case No. |
|---|-------|----------|
| | | |

| Date | Atty | Description | Hours | Rate | Amount | |
|------|------|-------------|-------|------|--------|---|
| 7/13/2017 | CH | Email to CG regarding the financial records WeVeel produced | 0.2 | 300.00 | 60.00 | #/ |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| 7/25/2017 | CG | Review of WeVeel's response to deficiency letter; internal communications about same. | 0.5 | 500.00 | 250.00 | #/ |
| 7/26/2017 | CG | Legal research concerning response to deficiency letter; internal discussions regarding arguments to make in reply; draft and edit reply. | 1.6 | 500.00 | 800.00 | #/ |
| 7/31/2017 | CG | Review and respond to emails from Andrea regarding deficiency letter. | 0.2 | 500.00 | 100.00 | #/ |
| 8/2/2017 | CG | Review Andrea's response to deficiency letter with denials about further documentation being due and alleged 18 boxes; internal communications with firm about proposed response. | 0.6 | 500.00 | 300.00 | #/ |
| | | | | | | |

| | **Total** |
|---|-----------|

| **Payments/Credits** |
|----------------------|
| **Balance Due** |

Case 14-00333-amc    Doc 209    Filed 10/04/18    Entered 10/04/18 16:44:38    Desc Main
Document      Page 45 of 59
Case 14-00333-amc    Doc 205-1    Filed 07/19/18    Entered 07/19/18 17:02:05    Desc
Doc 202-1    Filed 07/05/18    Entered 07/05/18 20:43:30    Desc
Exhibit 2 - Invoice with Notations   Page 3 of 17
Exhibit A-G    Page 4 of 37

Sidkoff, Pincus & Green. P.C.
1101 Market Street, Suite 2700
Philadelphia, PA 19107

# Invoice

| Date | Invoice # |
|---|---|
| 7/5/2018 | 18-1181 |

EIN:  23-2480704

| Bill To |
|---|
| Bonnie Finkel, Esquire<br>P.O. Box 1710<br>Cherry Hill, NJ 08034<br>RE: ATOMICA DESIGN GROUP |

| | Terms | Case No. |
|---|---|---|
| | | |
| | | |

| Date | Atty | Description | Hours | Rate | Amount |
|---|---|---|---|---|---|
| | | ███████████████ | | | |
| | | ███████████████ | | | |
| | | ███████████████ | | | |
| 8/15/2017 | CG | Review letter from Andrea related to scanning of 18 boxes; internal discussions regarding same. | 0.3 | 500.00 | 150.00 |
| | | | | | |
| 8/18/2017 | CG | Communications with 3rd party scanning company; review letter from Andrea stating objections; draft, edit and finalize response to her letter after internal communications. | 1.4 | 500.00 | 700.00 |
| 8/21/2017 | CG | Communications with Michele Dudas related copying of 18 boxes and follow-up emails with Ray Sziber. | 0.2 | 500.00 | 100.00 |
| | | ███████████████ | | | |
| | | ███████████████ | | | |
| | | ███████████████ | | | |

| | Total | |
|---|---|---|

| Payments/Credits |
|---|
| **Balance Due** |

Case 14-00333-amc    Doc 209    Filed 10/04/18    Entered 10/04/18 16:44:38    Desc Main
Document      Page 46 of 59
Case 14-00333-amc    Doc 205-1    Filed 07/19/18    Entered 07/19/18 17:02:05    Desc
Exhibit - Invoice with Notations    Page 4 of 17
Case 14-00333-amc    Doc 204-1    Filed 07/05/18    Entered 07/05/18 20:43:30    Desc
Exhibit A-G    Page 5 of 37

Sidkoff, Pincus & Green. P.C.
1101 Market Street, Suite 2700
Philadelphia, PA 19107

# Invoice

| Date | Invoice # |
|------|-----------|
| 7/5/2018 | 18-1181 |

EIN:  23-2480704

**Bill To**

Bonnie Finkel, Esquire
P.O. Box 1710
Cherry Hill, NJ 08034
RE: ATOMICA DESIGN GROUP

| | | | Terms | | Case No. |
|---|---|---|---|---|---|
| | | | | | |

| Date | Atty | Description | Hours | Rate | Amount | |
|------|------|-------------|-------|------|--------|---|
| 10/10/2017 | CG | Review of enclosure letter from Andrea 10-6-17 with copies of scanned docs (18 boxes); internal discussions regarding doc review. | 0.5 | 500.00 | 250.00 | #1 |
| 10/10/2017 | CG | Review of subset of recently produced WeVeel docs; internal discussions regarding doc review. | 0.6 | 500.00 | 300.00 | #2 |
| ███████ | ██ | ███████████████ | ██ | ██ | ██ | |
| 10/23/2017 | CG | Review of certain WeVeel Docs; internal discussions about status of doc review. | 0.4 | 500.00 | 200.00 | #2 |
| 11/22/2017 | CG | Review of certain WeVeel docs produced in discovery; internal discussions. | 1.2 | 500.00 | 600.00 | #2 |
| 11/27/2017 | CH | Reviewing 18 boxes of documents | 6 | 300.00 | 1,800.00 | #2 |
| 11/28/2017 | CH | Reviewing 18 boxes of Documents | 5.8 | 300.00 | 1,740.00 | #2 |
| 11/30/2017 | CG | Review of numerous WeVeel docs produced in discovery; internal discussions regarding same. | 1.6 | 500.00 | 800.00 | #2 |
| ███████ | ██ | ███████████████ | ██ | ██ | ██ | |
| 12/5/2017 | CH | Reviewing 18 boxes of Documents | 7.2 | 300.00 | 2,160.00 | #2 |
| 12/7/2017 | CG | Review of subset of WeVeel docs; internal discussions regarding same and overall doc review status. | 1.3 | 500.00 | 650.00 | |
| 12/8/2017 | CG | Meeting (internal) to discuss doc review, docs, and status of responsive discovery from WeVeel Defs; discussions about deficiencies; draft email to all counsel regarding crucial deficiencies with deadline. | 1.4 | 500.00 | 700.00 | |

| | Total |
|---|---|
| | |

| Payments/Credits |
|------------------|
| **Balance Due** |

Case 14-00333-amc    Doc 209    Filed 10/04/18    Entered 10/04/18 16:44:38    Desc Main
Document      Page 47 of 59
Case 14-00333-amc    Doc 205-1    Filed 07/19/18    Entered 07/19/18 17:02:05    Desc
Exhibit - Invoice with Notations    Page 5 of 17
Case 14-00333-amc    Doc 201    Filed 7/05/18    Entered 07/05/18 20:43:30    Desc
Exhibit A-G    Page 6 of 37

Sidkoff, Pincus & Green. P.C.
1101 Market Street, Suite 2700
Philadelphia, PA 19107

# Invoice

| Date | Invoice # |
|---|---|
| 7/5/2018 | 18-1181 |

EIN: 23-2480704

| Bill To |
|---|
| Bonnie Finkel, Esquire<br>P.O. Box 1710<br>Cherry Hill, NJ 08034<br>RE: ATOMICA DESIGN GROUP |

| | Terms | Case No. |
|---|---|---|
| | | |

| Date | Atty | Description | Hours | Rate | Amount | |
|---|---|---|---|---|---|---|
| 12/12/2017 | CG | Emails with counsel regarding deficient discovery; internal discussions. | 0.5 | 500.00 | 250.00 | |
| 12/13/2017 | CT | Discuss case strategy; research standard for Motion for Sanctions | 2 | 300.00 | 600.00 | #4 |
| 12/13/2017 | CG | Review Andrea's letter regarding deficient discovery; internal discussions regarding same - including legal research assignment. | 0.3 | 500.00 | 150.00 | |
| 12/14/2017 | CT | Research on requests to produce tax returns and Motion for Sanctions; draft language to add to letter | 3.3 | 300.00 | 990.00 | #4 |
| 12/14/2017 | CH | Reviewing 18 boxes of Documents | 3 | 300.00 | 900.00 | #3 |
| 12/15/2017 | CG | Emails with CH regarding draft of response to Andrea's letter concerning discovery deficiencies and caselaw. | 0.1 | 500.00 | 50.00 | |
| 12/22/2017 | CG | Review letter (12-21-2017) from Andrea regarding deficient discovery responses; internal discussions regarding same; draft final demand for documents to be produced by end of day. | 0.9 | 500.00 | 450.00 | |
| 12/26/2017 | CT | Research and begin outline of Motion for Sanctions | 1 | 300.00 | 300.00 | #4 |
| 12/27/2017 | CH | Drafting Memo of Law for Motion for Sanctions | 3.3 | 300.00 | 990.00 | |
| 12/28/2017 | CH | Drafting Memo of Law for Motion for Sanctions | 4.2 | 300.00 | 1,260.00 | #4 |
| 12/28/2017 | CG | Emails with CH regarding motion for sanctions and certain documents. | 0.2 | 500.00 | 100.00 | #4 |
| 12/29/2017 | CH | Research Rule 37 and Civil Contempt | 7 | 300.00 | 2,100.00 | #4 |

| | Total |
|---|---|
| | |

| Payments/Credits |
|---|
| **Balance Due** |

Case 14-00333-amc    Doc 209    Filed 10/04/18    Entered 10/04/18 16:44:38    Desc Main
Document    Page 48 of 59
Case 14-00333-amc    Doc 205-1    Filed 07/19/18    Entered 07/19/18 17:02:05    Desc
Exhibit - Invoice with Notations    Page 8 of 17
Case 14-00333-amc    Doc 201    Filed 07/06/18    Entered 07/06/18 20:43:30    Desc
Exhibit A-G    Page 7 of 37

Sidkoff, Pincus & Green. P.C.
1101 Market Street, Suite 2700
Philadelphia, PA 19107

# Invoice

| Date | Invoice # |
|------|-----------|
| 7/5/2018 | 18-1181 |

EIN:  23-2480704

| Bill To |
|---------|
| Bonnie Finkel, Esquire<br>P.O. Box 1710<br>Cherry Hill, NJ 08034<br>RE: ATOMICA DESIGN GROUP |

| | Terms | Case No. |
|---|-------|----------|
| | | |

| Date | Atty | Description | Hours | Rate | Amount | |
|------|------|-------------|-------|------|--------|---|
| 12/29/2017 | CG | Emails with CH regarding motion for sanctions and applicable standards for various transgressions of WeVeel Defs. | 0.2 | 500.00 | 100.00 | #4 |
| 12/29/2017 | CG | Review of initial draft from CH on Motion/Brief for Sanctions against WeVeel Defs. | 0.4 | 500.00 | 200.00 | #4 |
| 1/5/2018 | CG | Edit and revise Memo of Law for Motion for Sanctions; communications with CH regarding same. | 2.7 | 500.00 | 1,350.00 | #4 |
| 1/8/2018 | CH | Research civil contempt | 2.8 | 300.00 | 840.00 | #4 |
| 1/8/2018 | CG | Emails and discussions with CH about revisions to sanctions brief. | 0.3 | 500.00 | 150.00 | |
| 1/9/2018 | CH | Drafting Motion/Memo for Sanctions | 8.5 | 300.00 | 2,550.00 | #4 |
| 1/9/2018 | CG | Review updated versions of brief from CH; make additional revisions. | 1.4 | 500.00 | 700.00 | #4 |
| 1/10/2018 | CH | Editing, proofreading, putting exhibits together, filing brief | 4.6 | 300.00 | 1,380.00 | #4 |
| 1/10/2018 | CT | Proofread brief | 0.5 | 300.00 | 150.00 | #4 |
| 1/10/2018 | CG | Review final packet of motion/brief/proposed order/exhibits for sanctions and discussions with CH regarding same; communications with client regarding filing. | 0.9 | 500.00 | 450.00 | #4 |

| | Total |
|---|-------|
| | |

| Payments/Credits |
|------------------|
| **Balance Due** |

Case 14-00333-amc    Doc 209    Filed 10/04/18    Entered 10/04/18 16:44:38    Desc Main
Document      Page 49 of 59
Case 14-00333-amc    Doc 202-1    Filed 07/19/18    Entered 07/19/18 17:02:05    Desc
Exhibit - Invoice with Notations    Page 7 of 17
Case 14-00333-amc    Doc 205-18    Entered 07/05/18 20:43:30    Desc
Exhibit A-G    Page 8 of 37

Sidkoff, Pincus & Green. P.C.
1101 Market Street, Suite 2700
Philadelphia, PA 19107

# Invoice

| Date | Invoice # |
|------|-----------|
| 7/5/2018 | 18-1181 |

EIN: 23-2480704

**Bill To**

Bonnie Finkel, Esquire
P.O. Box 1710
Cherry Hill, NJ 08034
RE: ATOMICA DESIGN GROUP

| | Terms | Case No. |
|--|-------|----------|
| | | |

| Date | Atty | Description | Hours | Rate | Amount |
|------|------|-------------|-------|------|--------|
| | ■ | ■ | ■ | ■ | ■ |
| 1/24/2018 | CG | Review of Response to Motion for Sanctions; internal discussions regarding same. | 0.8 | 500.00 | 400.00 |
| 1/26/2018 | S. McBrea... | Reviewing emails produced by WeVeel for emails containing sales/financial information | 5 | 125.00 | 625.00 |
| 1/29/2018 | P. Pelli | Reviewing emails produced by WeVeel for emails containing sales/financial information | 5 | 125.00 | 625.00 |
| 1/29/2018 | S. McBrea... | Reviewing emails produced by WeVeel for emails containing sales/financial information | 7 | 125.00 | 875.00 |
| 1/30/2018 | CH | Research & Drafting Reply Brief | 3.3 | 300.00 | 990.00 |
| 1/30/2018 | P. Pelli | Reviewing emails produced by WeVeel for emails containing sales/financial information | 7 | 125.00 | 875.00 |
| 1/30/2018 | CG | Work on draft of Reply brief for Motion for Sanctions including spot legal research; internal discussions regarding same; email draft to CH. | 3.2 | 500.00 | 1,600.00 |

| | **Total** |
|--|-----------|

| **Payments/Credits** |
|----------------------|
| **Balance Due** |

Case 14-00333-amc    Doc 209    Filed 10/04/18    Entered 10/04/18 16:44:38    Desc Main
Document      Page 50 of 59
Case 14-00333-amc    Doc 205-1    Filed 07/19/18    Entered 07/19/18 17:02:05    Desc
Exhibit - Invoice with Notations    Page 8 of 17
Case 14-00333-amc    Exhibit A-G    Page 9 of 37

Sidkoff, Pincus & Green. P.C.
1101 Market Street, Suite 2700
Philadelphia, PA 19107

# Invoice

| Date | Invoice # |
|------|-----------|
| 7/5/2018 | 18-1181 |

EIN: 23-2480704

| Bill To |
|---------|
| Bonnie Finkel, Esquire<br>P.O. Box 1710<br>Cherry Hill, NJ 08034<br>RE: ATOMICA DESIGN GROUP |

| Terms | Case No. |
|-------|----------|
|       |          |

| Date | Atty | Description | Hours | Rate | Amount | |
|------|------|-------------|-------|------|--------|--|
| 1/31/2018 | CH | Research & Drafting Reply Brief | 9 | 300.00 | 2,700.00 | #4 |
| 1/31/2018 | CG | Communications with CH regarding draft of Reply brief and relevant exhibits. | 0.2 | 500.00 | 100.00 | #4 |
| 2/1/2018 | CH | Research Rule 34 ▮▮▮▮ | ▮ 6 | 300.00 | 1,800.00 | #4 |
| 2/1/2018 | CG | Review redline from CH on Reply Brief for Sanctions; revise and discuss with her. | 0.7 | 500.00 | 350.00 | #4 |
| 2/2/2018 | P. Pelli | Reviewing emails produced by WeVeel for emails containing sales/financial information ▮▮▮▮ | 9 | 125.00 | 1,125.00 | #5 |
| 2/5/2018 | P. Pelli | Reviewing emails produced by WeVeel for emails containing sales/financial information | 4 | 125.00 | 500.00 | #5 |
| 2/5/2018 | S. McBrea... | Reviewing emails produced by WeVeel for emails containing sales/financial information ▮▮▮▮ | 7 | 125.00 | 875.00 | #5 |
| 2/6/2018 | P. Pelli | Reviewing emails produced by WeVeel for emails containing sales/financial information ▮▮▮▮ | 3 | 125.00 | 375.00 | #5 |
| 2/7/2018 | P. Pelli | Reviewing emails produced by WeVeel for emails containing sales/financial information ▮▮▮▮ | 3 | 125.00 | 375.00 | #5 |

| | Total |
|-|-------|
| | |

| Payments/Credits |
|------------------|
| **Balance Due** |

Case 14-00333-amc    Doc 209    Filed 10/04/18    Entered 10/04/18 16:44:38    Desc Main
Document    Page 51 of 59
Case 14-00333-amc    Doc 205-1    Filed 07/19/18    Entered 07/19/18 17:02:05    Desc
Exhibit - Invoice with Notations    Page 9 of 17
Case 14-00333-amc    Doc 203-1    Filed 07/05/18    Entered 07/05/18 20:43:30    Desc
Exhibit A-G    Page 10 of 37

Sidkoff, Pincus & Green. P.C.
1101 Market Street, Suite 2700
Philadelphia, PA 19107

# Invoice

| Date | Invoice # |
|------|-----------|
| 7/5/2018 | 18-1181 |

EIN: 23-2480704

| Bill To |
|---------|
| Bonnie Finkel, Esquire<br>P.O. Box 1710<br>Cherry Hill, NJ 08034<br>RE: ATOMICA DESIGN GROUP |

| | Terms | Case No. |
|---|-------|----------|
| | | |

| Date | Atty | Description | Hours | Rate | Amount | |
|------|------|-------------|-------|------|--------|---|
| 2/9/2018 | P. Pelli | Reviewing emails produced by WeVeel for emails containing sales/financial information | 8 | 125.00 | 1,000.00 | #5 |
| 2/9/2018 | S. McBrea... | Reviewing emails produced by WeVeel for emails containing sales/financial information | 7 | 125.00 | 875.00 | #5 |
| 2/12/2018 | P. Pelli | Reviewing emails produced by WeVeel for emails containing sales/financial information | 5 | 125.00 | 625.00 | #5 |
| 2/12/2018 | S. McBrea... | Research sanctions | 5 | 125.00 | 625.00 | #4 |
| 2/13/2018 | P. Pelli | Reviewing emails produced by WeVeel for emails containing sales/financial information | 1 | 125.00 | 125.00 | |
| 2/14/2018 | CH | Attended hearing | 1.5 | 300.00 | 450.00 | #6 |
| 2/14/2018 | CT | Attend hearing | 1.5 | 300.00 | 450.00 | #6 |
| 2/14/2018 | CG | Morning prep for sanctions hearing including outline of arguments, review of relevant filings. | 1.7 | 500.00 | 850.00 | |
| 2/14/2018 | CG | Attend/participate in hearing; post-hearing discussion and emails with client about issues in front of court and continued hearing; internal discussions regarding same. | 2.5 | 500.00 | 1,250.00 | |

| | Total |
|---|-------|
| | |

| Payments/Credits |
|------------------|
| **Balance Due** |

Case 14-00333-amc    Doc 209    Filed 10/04/18    Entered 10/04/18 16:44:38    Desc Main
Document      Page 52 of 59
Case 14-00333-amc    Doc 205-1    Filed 07/19/18    Entered 07/19/18 17:02:05    Desc
Exhibit - Invoice with Notations    Page 10 of 17
Case 14-00333-amc    Doc 202-1    Filed 07/05/18    Entered 07/05/18 20:43:30    Desc
Exhibit A-G    Page 11 of 37

Sidkoff, Pincus & Green. P.C.
1101 Market Street, Suite 2700
Philadelphia, PA 19107

# Invoice

| Date | Invoice # |
|------|-----------|
| 7/5/2018 | 18-1181 |

EIN: 23-2480704

**Bill To**

Bonnie Finkel, Esquire
P.O. Box 1710
Cherry Hill, NJ 08034
RE: ATOMICA DESIGN GROUP

| Terms | Case No. |
|-------|----------|
|       |          |

| Date | Atty | Description | Hours | Rate | Amount | |
|------|------|-------------|-------|------|--------|---|
| 2/22/2018 | CG | Call and discussions with Kemp regarding WeVeel QuickBooks; internal discussions regarding same; email with Walmart counsel about meet and confer. | 0.6 | 500.00 | 300.00 | #7 |
| 2/23/2018 | CG | Internal discussions regarding status of QB review from WeVeel; emails with Sean Kemp about issues including lack of sales data. | ●2 0.4 | 500.00 | 100 200.00 | #7 |
| 2/28/2018 | CH | Emails with Sean Kemp regarding WeVeel's QuickBooks login | 0.1 | 300.00 | 30.00 | #7 |
| 2/28/2018 | CH | Reviewing WeVeel's QuickBooks | 1.8 | 300.00 | 540.00 | #7 |
| 3/2/2018 | CH | Reviewing WeVeel's QuickBooks | 4 | 300.00 | 1,200.00 | #7 |
| 3/8/2018 | CH | Reviewing WeVeel's Fin. Stmts and Tax Returns | 2.3 | 300.00 | 750.00 | #7 |

| | Total |
|--|-------|
|  |       |

| Payments/Credits |
|------------------|
| **Balance Due** |

10

Case 14-00333-amc    Doc 209    Filed 10/04/18    Entered 10/04/18 16:44:38    Desc Main
Document    Page 53 of 59
Case 14-00333-amc    Doc 205-1    Filed 07/19/18    Entered 07/19/18 17:02:05    Desc
Exhibit - Invoice with Notations    Page 11 of 17
Case 14-00333-amc    Doc 202-1    Filed 07/06/18    Entered 07/06/18 20:43:30    Desc
Exhibit A-G    Page 12 of 37

Sidkoff, Pincus & Green. P.C.
1101 Market Street, Suite 2700
Philadelphia, PA 19107

# Invoice

| Date | Invoice # |
|------|-----------|
| 7/5/2018 | 18-1181 |

EIN: 23-2480704

| Bill To |
|---------|
| Bonnie Finkel, Esquire
P.O. Box 1710
Cherry Hill, NJ 08034
RE: ATOMICA DESIGN GROUP |

| | | | | Terms | Case No. |
|---|---|---|---|---|---|

| Date | Atty | Description | Hours | Rate | Amount |
|------|------|-------------|-------|------|--------|
| | | ▓▓▓▓▓▓▓▓▓▓ | | | |
| 3/12/2018 | P. Pelli | Research sanctions | 5 | 125.00 | 625.00 | #8 i9 |
| | | ▓▓▓▓▓▓ | | | |
| | | ▓▓▓▓▓▓▓▓ | | | |
| | | ▓▓▓▓▓▓▓▓ | | | |
| | | ▓▓▓▓▓▓▓▓ | | | |
| | | ▓▓▓▓▓▓▓▓ | | | |
| | | ▓▓▓▓▓▓ | | | |

| | Total |
|---|-------|

| Payments/Credits |
|------------------|
| **Balance Due** |

Case 14-00333-amc   Doc 209   Filed 10/04/18   Entered 10/04/18 16:44:38   Desc Main
Document      Page 54 of 59
Case 14-00333-amc   Doc 205-1   Filed 07/19/18   Entered 07/19/18 17:02:05   Desc
Case 14-00333-amc   Doc 202-1   Filed 07/06/18   Entered 07/05/18 20:43:30   Desc
Exhibit - Invoice with Notations   Page 12 of 17
Exhibit A-G   Page 13 of 37

Sidkoff, Pincus & Green. P.C.
1101 Market Street, Suite 2700
Philadelphia, PA 19107

# Invoice

| Date | Invoice # |
|------|-----------|
| 7/5/2018 | 18-1181 |

EIN:  23-2480704

| Bill To |
|---------|
| Bonnie Finkel, Esquire
P.O. Box 1710
Cherry Hill, NJ 08034
RE: ATOMICA DESIGN GROUP |

| | | Terms | | Case No. | |
|-|-|-------|-|----------|-|

| Date | Atty | Description | Hours | Rate | Amount |
|------|------|-------------|-------|------|--------|
| ███ | ███ | ███████████████████████ | █ | ███ | ███ |
| ███ | ███ | ████████████████████ | █ | ███ | ███ |
| ███ | ███ | ███████████████ | █ | ███ | ███ |
| ███ | ███ | ████████████████████████████ | █ | ███ | ███ |
| 3/28/2018 | CH | Discussion with Casey about Supplemental Brief | 0.5 | 300.00 | 150.00 |
| 3/28/2018 | CH | Outline of Supplemental Brief | 0.8 | 300.00 | 240.00 |
| ███ | ███ | ████████████████ | █ | ███ | ███ |
| 3/29/2018 | CH | Drafting Supplemental Brief | 4 | 300.00 | 1,200.00 |
| ███ | ███ | █████████████████████ | █ | ███ | ███ |
| 3/30/2018 | CH | Drafting Supplemental Brief | 2.3 | 300.00 | 690.00 |
| 4/2/2018 | CH | Drafting supplemental brief | 5 | 300.00 | 1,500.00 |
| 4/3/2018 | CH | Research and drafting supplemental brief | 9.6 | 300.00 | 2,880.00 |
| 4/4/2018 | CG | Review and markup Supplemental brief in support of motion for sanctions; discussion with CH regarding same. | 2.6 | 500.00 | 1,300.00 |
| 4/5/2018 | CH | Editing, roofreading, putting exhibits together, filing brief | 1.8 | 300.00 | 540.00 |
| 4/5/2018 | CT | Proofread brief | 0.5 | 300.00 | 150.00 |

| | Total |
|-|-------|

| Payments/Credits |
|------------------|

| **Balance Due** |
|-----------------|

Case 14-00333-amc    Doc 209    Filed 10/04/18    Entered 10/04/18 16:44:38    Desc Main
Document      Page 55 of 59
Case 14-00333-amc    Doc 205-1    Filed 07/19/18    Entered 07/19/18 17:02:05    Desc
Exhibit - Invoice with Notations    Page 13 of 17
Case 14-00333-amc    Doc 202-1    Filed 07/06/18    Entered 07/05/18 20:43:30    Desc
Exhibit A-G    Page 14 of 37

Sidkoff, Pincus & Green. P.C.
1101 Market Street, Suite 2700
Philadelphia, PA 19107

# Invoice

EIN: 23-2480704

| Date | Invoice # |
|------|-----------|
| 7/5/2018 | 18-1181 |

| Bill To |
|---------|
| Bonnie Finkel, Esquire<br>P.O. Box 1710<br>Cherry Hill, NJ 08034<br>RE: ATOMICA DESIGN GROUP |

| | Terms | Case No. |
|--|-------|----------|
| | | |

| Date | Atty | Description | Hours | Rate | Amount |
|------|------|-------------|-------|------|--------|
| 4/5/2018 | CG | Review updated brief from CH concerning sanctions, make final redline changes. | 0.6 | 500.00 | 300.00 |
| 4/10/2018 | CG | Review Reply to our supplemental brief for sanctions; internal discussions and communications with client regarding same. | 0.4 | 500.00 | 200.00 |
| 4/11/2018 | CH | Attend Hearing | 1.5 | 300.00 | 450.00 |
| 4/11/2018 | CH | Attend hearing | 1.5 | 300.00 | 450.00 |
| 4/11/2018 | CG | Preparation for sanctions hearing (review filings/exhibits, discussions with CH), attend sanctions hearing and discussions thereafter with client and internally concerning hearing and list of issues to prepare for court. | 3.1 | 500.00 | 1,550.00 |
| 4/20/2018 | CH | Outline for Letter Brief | 0.8 | 300.00 | 240.00 |
| 4/20/2018 | CH | Conf with CG re: letter brief | 0.6 | 300.00 | 180.00 |
| 4/21/2018 | CH | Drafting letter brief | 2.5 | 300.00 | 750.00 |
| 4/23/2018 | CH | Research regarding sanctions for deficient discovery | 1 | 300.00 | 300.00 |
| 4/23/2018 | CH | Drafting letter brief | 7 | 300.00 | 2,100.00 |

| | Total |
|--|-------|
| | |

| Payments/Credits |
|------------------|
| **Balance Due** |

Sidkoff, Pincus & Green. P.C.
1101 Market Street, Suite 2700
Philadelphia, PA 19107

# Invoice

| Date | Invoice # |
|------|-----------|
| 7/5/2018 | 18-1181 |

EIN: 23-2480704

| Bill To |
|---------|
| Bonnie Finkel, Esquire<br>P.O. Box 1710<br>Cherry Hill, NJ 08034<br>RE: ATOMICA DESIGN GROUP |

| | | | | Terms | | Case No. | |
|---|---|---|---|---|---|---|---|
| Date | Atty | Description | Hours | Rate | | Amount | |
| 4/24/2018 | CG | Review CH's draft of letter brief for sanctions; make redline changes with comments for additions and discuss with her. | 1.6 | 500.00 | | 800.00 | *8;9 |
| 4/25/2018 | CH | Research sanctions and fee petitions | 5 | 300.00 | | 1,500.00 | *8;9 |
| 4/25/2018 | CH | Editing, proofreading, putting exhibits together, filing brief | 5 | 300.00 | | 1,500.00 | *8;9 |
| 5/8/2018 | CG | Review of Reply by WeVeel to Sanctions letter brief; internal discussions regarding same. | 0.5 | 500.00 | | 250.00 | *8 |
| 5/22/2018 | CH | Research "usual course of business" | 2 | 300.00 | | 600.00 | *8;9 |

| | Total |
|---|---|
| | |

| Payments/Credits |
|------------------|
| **Balance Due** |

Sidkoff, Pincus & Green. P.C.
1101 Market Street, Suite 2700
Philadelphia, PA 19107

# Invoice

| Date | Invoice # |
|------|-----------|
| 7/5/2018 | 18-1181 |

EIN: 23-2480704

**Bill To**

Bonnie Finkel, Esquire
P.O. Box 1710
Cherry Hill, NJ 08034
RE: ATOMICA DESIGN GROUP

| | Terms | Case No. |
|---|-------|----------|
| | | |

| Date | Atty | Description | Hours | Rate | Amount |
|------|------|-------------|-------|------|--------|
| 5/22/2018 | C. Myers | Research sanctions | 4 | 125.00 | 500.00 |
| 5/23/2018 | C. Myers | Research sanctions | 8 | 125.00 | 1,000.00 |
| 5/24/2018 | C. Myers | Research sanctions and prepare memo on sanctions | 7 | 125.00 | 875.00 |
| 5/28/2018 | CH | Research regarding ordinary course of business | 4.5 | 300.00 | 1,350.00 |
| 5/29/2018 | CH | Drafting reply letter brief | 5.2 | 300.00 | 1,560.00 |
| 5/29/2018 | CG | Review reply letter for tomorrow's sanctions hearing; make changes and finalize with CH. | 1.7 | 500.00 | 850.00 |
| 5/30/2018 | CH | Attend Motion for Sanctions hearing | 4 | 300.00 | 1,200.00 |
| 5/30/2018 | CG | Prep for sanctions hearing by reviewing relevant filings and discussions with CH; attend/participate in sanctions hearing. | 4.5 | 500.00 | 2,250.00 |

| | Total |
|---|-------|

| Payments/Credits |
|------------------|

| **Balance Due** |
|-----------------|

15

Sidkoff, Pincus & Green. P.C.
1101 Market Street, Suite 2700
Philadelphia, PA 19107

EIN: 23-2480704



# Invoice

| Date | Invoice # |
|------|-----------|
| 7/5/2018 | 18-1181 |

**Bill To**

Bonnie Finkel, Esquire
P.O. Box 1710
Cherry Hill, NJ 08034
RE: ATOMICA DESIGN GROUP

| | Terms | Case No. |
|--|-------|----------|
| | | |

| Date | Atty | Description | Hours | Rate | Amount | |
|------|------|-------------|-------|------|--------|--|
| 6/21/2018 | CH | Reviewing May 30th Hearing Transcript | 1 | 300.00 | 300.00 | *8 |
| 6/22/2018 | CH | Research and drafting Fee Petition Letter Brief | 7.2 | 300.00 | 2,160.00 | *10 |
| 7/3/2018 | CG | Work with CH on Fee Petition; mark up draft letter | 2.4 | 500.00 | 1,200.00 | */0 |

| | Total |
|--|-------|
| | |

**Payments/Credits**

**Balance Due**

Page 16

Case 14-00333-amc    Doc 209    Filed 10/04/18    Entered 10/04/18 16:44:38    Desc Main
Document    Page 59 of 59
Case 14-00333-amc    Doc 205-1    Filed 07/19/18    Entered 07/19/18 17:02:05    Desc
Case 14-00333-amc    Doc 205-1    Filed 07/19/18    Entered 07/05/19 20:43:30    Desc
Exhibit - Invoice with Notations    Page 17 of 37
Exhibit A-G    Page 18 of 37

Sidkoff, Pincus & Green. P.C.
1101 Market Street, Suite 2700
Philadelphia, PA 19107

# Invoice

| Date | Invoice # |
|------|-----------|
| 7/5/2018 | 18-1181 |

EIN: 23-2480704

**Bill To**

Bonnie Finkel, Esquire
P.O. Box 1710
Cherry Hill, NJ 08034
RE: ATOMICA DESIGN GROUP

| | | | | Terms | Case No. |
|--|--|--|--|-------|----------|
| | | | | | |

| Date | Atty | Description | Hours | Rate | Amount |
|------|------|-------------|-------|------|--------|
| 7/3/2018 | CH | Drafting Fee Petition Letter Brief | 3 | 300.00 | 900.00 |
| 7/3/2018 | C. Myers | Legal Research Reasonableness of Fees | 1 | 125.00 | 125.00 |
| 7/3/2018 | D. Eckenro… | Legal Research Reasonableness of Fees | 1 | 125.00 | 125.00 |
| 7/3/2018 | M. Corcoran | Legal Research Reasonableness of Fees | 1 | 125.00 | 125.00 |
| 7/5/2018 | CH | Drafting Declaration | 0.2 | 300.00 | 60.00 |
| 7/5/2018 | CH | Editing Fee Petition Letter Brief | 0.8 | 300.00 | 240.00 |
| 7/5/2018 | CT | Drafting Declaration | 0.2 | 300.00 | 60.00 |
| 7/5/2018 | CG | Continue to work with CH on FEe Petition; final mark ups | 2.2 | 500.00 | 1,100.00 |

| | **Total** | |
|--|-----------|--|
| | | ▆▆▆ |

| **Payments/Credits** | ▆▆ |
|----------------------|------|
| **Balance Due** | ▆▆ |